**BARBARA J. BENNETT,** Plaintiff–Appellant, v. **DONALD R. BENNETT,** Defendant–Appellee

NO. 14389

(FC–D NO. 89–1740)

MARCH 12, 1991

BURNS, C.J., HEEN, AND TANAKA, JJ.

## OPINION OF THE COURT BY BURNS, C. J.

In this divorce case commenced by plaintiff Barbara J. Bennett (Barbara) against defendant Donald R. Bennett (Donald), Barbara appeals the family court's January 30, 1990 Divorce Decree (Divorce Decree). Specifically, Barbara appeals the division and distribution of the marital residence ($215,000.00 gross market value).

Barbara contends that the family court abused its discretion when it conditioned her being awarded the residence subject to two debts ($25,721.12 owed by Barbara to her father and the $57,956.54 mortgage) upon a $65,639.44 payment to Donald on or before July 30, 1990. We note, in passing, that the family court thought that $65,639.44 was one–half of the value after subtraction of the two debts. In fact, one–half was $65,661.17.

On the ground that the family court failed to comply with the mandates of relevant statutory and case law, we vacate the family

court's order requiring Barbara to pay Donald $65,682.90 on or before July 30, 1990 and remand the case.

## FACTS

The relevant dates are as follows:

| | |
|---|---|
| March 8, 1984[1] | Date of marriage (DOM) |
| May 8, 1989 | Date of complaint (DOC) |
| May 25, 1989 | Date of final separation in contemplation of divorce (DOFSICOD) |
| December 15, 1989 | Date of the conclusion of the evidentiary part of the trial (DOCOEPOT) |
| January 30, 1990 | Date of divorce (DOD) |
| May 29, 1990 | Filing date of Findings of Fact and Conclusions of Law (FOF & COL) |

Barbara has four children from a prior marriage. They were born, respectively, in 1970, 1973, 1975, 1977. Barbara exited her prior marriage with custody of her children and title to 59–526 Aukauka Road, Haleiwa, Hawaii. On December 16, 1983, prior to the DOM, Barbara sold 59–526 Aukauka Road by way of an agreement of sale. The purchaser assumed Barbara's mortgage, paid Barbara $27,129.67 in net cash, and promised to pay Barbara the $66,103.96 balance due, plus interest at eleven percent per year, on or before October 16, 1985. Monthly payments of $1,174.31 commenced on January 16, 1984.

On February 20, 1984, prior to the DOM, Barbara and Donald contracted to purchase 59–003 Holawa Place, Haleiwa, Hawaii. Closing occurred on July 13, 1984, after the DOM. Apparently,

---

[1] The only evidence on the subject indicates that the parties were married on April 8, 1984. However, neither party has disputed the family court's finding that they were married on March 8, 1984.

title was conveyed to Barbara and Donald. The $142,500.00 purchase involved an assumption of a $63,935.63 mortgage and the payment of $78,564.37 in cash. The proceeds of Barbara's sale of 59–526 Aukauka Road ultimately funded $70,000.00 of the $78,564.37 cash payment. There is no evidence that Donald had any assets on the DOM. It appears that the remaining $8,564.34 of the cash payment was ultimately funded either from the proceeds of Barbara's sale of 59–526 Aukauka Road or from funds earned by Barbara and/or Donald after the DOM.

On October 26, 1989, the gross market value of 59–003 Holawa Place was $215,000.00. On December 7, 1989, the balance due on the mortgage was $57,956.54. The $25,721.12 Barbara borrowed from her father during the course of the marriage to pay for marital expenses remained unsecured and due on the DOCOEPOT.

In his oral decision, the family court judge stated in relevant part as follows:

> [THE COURT:]    As to the division of the property. The Court did take into consideration the mandates of the Supreme Court in reference to HRS 580–47 and that the Court has to be just and equitable taking into consideration all of the factors involved in each individual case.
>
> Court is going to accept the appraisal of Harlin Young of two hundred and fifteen thousand dollars.
>
> Court is going to deduct from that right off the top the existing mortgage of fifty–eight thousand dollars.
>
> Court is going to order repayment of the loans from [Barbara's] father of twenty–five thousand plus. I believe the figure was something like twenty–five thousand seven twenty–one twelve cents.
>
> * * *

THE COURT: And the remainder shall be divided fifty/fifty.

I had problems with this case primarily because it appeared at least to the Court that [Barbara] contributed at the very beginning one — sixth seventh of the down payment versus one seventh by [Donald].

However, in reviewing this case Court finds that any time cash is put into purchase of a residential home to be occupied by the married couple it becomes marital property.

If it's only for a short time loan, short time investment — no, long time investment — if it's short time then whoever puts in the money may be able to withdraw whatever sum he or she contributed. And after that any appreciation — showed appreciation could be split — as discussed yesterday — seventy–five/twenty five.

In this case this is a marriage of four years plus. The Court has no alternative but to rule that the division should be — shall be fifty/fifty.

Transcript, January 15, 1989, at 198–99.

Paragraph 4(b) of the Divorce Decree provides in relevant part as follows:

**Real Property:** [Barbara] and [Donald] are awarded the property at 59–003 Holawa, Haleiwa, Hawaii (hereinafter "property") as tenants in common. [Barbara] shall be solely responsible for all outstanding debt on the property and shall hold [Donald] harmless from liability therefore. [Barbara] shall have exclusive use and occupancy of the property and shall be entitled to all rents, if any, received therefrom.

Within six months of the entry of a Decree herein [Barbara] shall pay to [Donald] the sum of $65,639.44 for his interest in the property. Upon payment, [Donald]

shall execute all documents necessary to convey his interest in said property to [Barbara]. [Barbara] shall thereafter hold the property as tenant in severalty.

\* \* \*

Conclusions of Law 7, 11, and 13 state as follows:

7. The cash that [Barbara] contributed towards the down payment for the purchase of the property is a gift to the marriage and is a marital asset.

\* \* \*

11. [Barbara] shall pay [Donald] the sum of $65,639.44 for his interest in the property within six months of the entry of the Decree.

\* \* \*

13. If [Barbara] does not pay [Donald] within six months, then the property shall be put up for sale within thirty days, and the parties shall divide equally the net proceeds.

## DISCUSSION

In prior cases we have developed a process for all family courts to follow when dividing and distributing property in divorce cases. In *Malek v. Malek*, 7 Haw. App. 377, 768 P.2d 243 (1989), we defined five categories of net market values (NMVs). In *Woodworth v. Woodworth*, 7 Haw. App. 11, 740 P.2d 36 (1987), *overruled in part*, *Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988), we established uniform starting points (USPs) for, and uniform maximum limits on, the division and distribution of the five categories of NMVs. In *Muraoka v. Muraoka*, 7 Haw. App. 432, 776 P.2d 418 (1989), we imposed upon family court judges a duty to explain all objected to deviations or nondeviations from the applicable USPs.

The process we have developed is designed to standardize and facilitate the factual analysis, facilitate settlements, identify the reasons for a particular decision, facilitate appellate review, facilitate the continued case–by–case development of express and uniform ranges of choice applicable statewide in similar fact situations, and bring as much statewide consistency, uniformity, and predictability as is possible to family court decisions dividing and distributing property in divorce cases. This process is designed and intended to replace the prior system where the family court decided and the appellate court reviewed each case on an ad hoc basis and without expressly identifying all the relevant facts and specific reasons for the decision.

In *Hashimoto v. Hashimoto*, 6 Haw. App. 424, 725 P.2d 520 (1986), we stated:

> The need for . . . "uniform starting points" is obvious. If different family court judges commence deciding in what proportion to equitably divide the value of the property from different starting points, which could range from a 100–0 split to a 0–100 split, then their awards will be equally diverse. There will be no uniformity, stability, clarity, or predictability. The ultimate decision will depend less on the facts and the law and more on who is the judge assigned to hear and decide the case. Since the standard of appellate review is the abuse of discretion standard, appellate courts will be relatively powerless to control or remedy the problem.
>
> If family court judges are required to commence deciding in what proportion to equitably divide the value of the property from a uniform starting point, and to identify each of the factors that cause them to deviate and award a different proportion, then their decisions will be more uniform and predictable and the process of

> appellate review under the abuse of discretion standard
> will be greatly facilitated.

6 Haw. App. at 426–27, 725 P.2d at 522–23 (footnote omitted).

Hawaii Revised Statutes (HRS) § 580–47(a) (Supp. 1990)[2] does not in any way restrict or preclude the Hawaii appellate courts, in the exercise of their supervisory and review functions, from narrowing the discretion available to the various family courts by establishing and mandating adherence to uniform categories, USPs, uniform limits on the range of choice, and uniform procedures. HRS § 580–47(a) authorizes "the court to divide and distribute marital property." Ultimately, that court is the Hawaii Supreme Court.

The applicable standard of review, abuse of discretion, is of judicial, not legislative, origin. The same is true of its definition. It is the "range of choice" allowed to the trial court by the appellate court. *See Myers v. Myers*, 70 Haw. 143, 148–49, 764 P.2d 1237, 1241 (1988). As we noted in *Mack v. Mack*, 7 Haw. App. 171, 179 n.8, 749 P.2d 478, 483 n.8 (1988), in those areas where the law has not progressed to the point where uniform categories, USPs, and uniform ranges of choice have been developed, appellate courts either have to defer to the trial court's discretion by allowing a

---

[2] Hawaii Revised Statutes § 580–47(a) (Supp. 1990) states, in relevant part, as follows:

> Support orders; division of property. (a) Upon granting a divorce, . . ., the court may make such further orders as shall appear just and equitable . . . (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

wide range of choice or apply a different standard of appellate review and impose their choice. As the principles and policies of the law are developed, however, the trial court's range of choice is correspondingly narrowed. The law often progresses to the point where the trial court's range of choice becomes so precise that the applicable standard of appellate review progresses from abuse of discretion to *de novo* or right/wrong.

As noted above, this court has developed the uniform categories, the USPs, and some uniform limits on the family court's range of choice when dividing and distributing property NMVs in divorce cases. The Hawaii Supreme Court has not disapproved of these developments. Moreover, the Hawaii Supreme Court has also imposed uniform limits on the family court's range of choice. For example, in *Cassiday v. Cassiday*, 68 Haw. 383, 716 P.2d 1133 (1986), the Hawaii Supreme Court concluded that "[i]t is generally accepted that each divorcing party is entitled to the date of marriage net value of his or her premarital property and the date of acquisition net value of gifts and inheritances which he or she received during the marriage" and that "the trial court may award up to half of [the during–marriage] appreciation [of separate property] to the non–owning spouse[.]" 68 Haw. at 389–90, 716 P.2d at 1138. Subsequently, in *Myers*, it defined "marriage" as a "partnership," thereby deciding that partnership principles guide and limit the range of the family court's choices.

In *Malek*, we defined categories 1 and 3 as follows:

Category 1. The net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 3. The date–of–acquisition NMV, plus or minus, of property separately acquired by gift or

> inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

7 Haw. App. at 380–81 n.1, 768 P.2d at 246 n.1.

*Hashimoto* defines USPs as being points from which to commence equitable distribution analysis and application of statutory and case law mandates.

In *Woodworth*, we stated that "[t]he USP for dividing the NMVs under categories 1 and 3 is 100 percent to the legal owner spouse and zero percent to the nonowner spouse." 7 Haw. App. at 17, 740 P.2d at 41.

In *Woodworth*, we stated that after the family court properly categorizes the NMVs, it must start at the applicable USPs and "then . . . must exercise its equitable discretion under applicable case law and Hawaii Revised Statutes § 580–47(a) (1985)." 7 Haw. App. at 19, 740 P.2d at 42.

In *Muraoka*, we stated, in relevant part, as follows:

> If the family court's division and distribution of the assets and debts of the parties is appealed and the appellant is dissatisfied because the family court's division and distribution materially differs from the USP, then the family court must specify the factual considerations upon which the difference is based. If the appellant is dissatisfied because the family court's division and distribution does not materially differ from the USPs in the manner requested at the trial by the appellant, then the family court must specify the factual considerations upon which the denial of the requested difference is based.

7 Haw. App. at 439, 776 P.2d at 422.

In our view, the uniform process we have developed is much better than the prior ad hoc process and is accomplishing its purposes outlined above. If there is a problem with the uniform

process, it is with its implementation, not with the process itself. The appropriate solution to an implementation problem is to require proper implementation, not to discontinue the process.

Therefore, we reemphasize that the uniform process is only a process. USPs are only starting points. There are currently only a few limits on the family court's range of choice. Subject to these few limits, the family court currently has, and must knowledgeably exercise, a wide range of choice and equitable discretion when deciding how to divide and distribute property in divorce cases.

In this case, Barbara brought into the marriage no less than $20,000.00 cash and a $66,103.96 receivable. The combined NMV of those two assets on the DOM is Barbara's category 1 NMV except the part, if any, that she subsequently legally gifted to Donald. The questions for the family court to decide were:

1. What was the NMV of Barbara's cash and receivables on the DOM?

2. Did Barbara legally gift any part of the NMV of her DOM cash and receivable to Donald during the marriage? More specifically, when Barbara used her DOM cash and receivable in the purchase of 59–003 Holawa Place in joint ownership with Donald, did she legally gift the amount used, or any portion thereof, to Donald? To constitute a gift, the essential elements are (1) donative intent, (2) delivery, and (3) acceptance. *Estate of Lalakea*, 26 Haw. 243 (1922); *Almeida v. Almeida*, 4 Haw. App. 513, 669 P.2d 174 (1983); 33 Am. Jur. 2d *Gifts* §§ 17, 20, 34 (1968). If there was no gift, then the entire NMV is Barbara's category 1 and 2 NMV. If there was a gift, then Barbara has a category 1 and 2 NMV and Donald has a category 3 and 4 NMV.

3. Starting at the applicable USP and giving due consideration to the mandates of HRS § 580–47(a), *Woodworth, Muraoka*, and other applicable case law, should the family court's award differ from the applicable USP and, if so, how and why?

Especially in the light of the family court's oral decision, it is apparent that its conclusion that Barbara's financial contribution toward the purchase of 59–003 Holawa Place was "a gift" is not supported by the necessary finding that all of the essential elements of a legal gift from Barbara to Donald occurred.

Moreover, the family court decided this case either on the basis of (1) its erroneous conclusion that it had no equitable discretion or (2) an inequitable rule. It decided that when one party puts premarital cash into the purchase of a residence occupied by the parties, and then the parties divorce, the following rules of division and distribution apply to the NMV of the residence. If it is a marriage of less than five years, the party who put in the cash shall be awarded the amount put in and seventy–five percent of the excess. The other party shall be awarded twenty–five percent of the excess. If it is a marriage of five years or longer, the entire NMV shall be equally divided.

The applicable standard of appellate review is the abuse of discretion standard. *Takaki v. Takaki*, 3 Haw. App. 189, 647 P.2d 726 (1982). Under that standard of review, the appellate court is not authorized to disturb the family court's decision unless (1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason. Except in those rare situations where the appellate court can conclude, as a matter of law, that the family court had only one choice, its only authorized courses of action are to affirm or to vacate and remand.

In this case, situations (1) and (2) are present and we cannot conclude, as a matter of law, that the family court had only one choice. Therefore, our only authorized course of action is to vacate and remand.

On remand, the family court must (1) enter its findings on all relevant questions of fact and its conclusions on all relevant

questions of law; (2) having determined the relevant net market values and their categories, start at the applicable USPs; (3) stay within the few existing judicially created limits on its range of choice; (4) meaningfully consider the equities; (5) appropriately exercise its equitable discretion; and (6) comply with the mandate of *Muraoka.*

## CONCLUSION

Accordingly, we vacate Conclusions of Law 7, 11, and 13 of the May 29, 1990 Findings of Fact and Conclusions of Law. We vacate the parts of paragraph 4(b) of the January 30, 1990 Divorce Decree that state "$65,639.44," "[w]ithin six months of the entry of a Decree herein," and "within six months of the entry of a Decree herein." We remand for further proceedings with respect to the vacated items.

*Karen M. Radius* (Radius & Lau) on the briefs for plaintiff–appellant.
*William E. H. Tagupa* on the brief for defendant–appellee.

## CONCURRING OPINION BY HEEN, J.

I concur in the result reached by the majority. However, I am constrained, albeit belatedly, to express disenchantment with the uniform starting points (USP) first established by this court in *Hashimoto v. Hashimoto*, 6 Haw. App. 424, 725 P.2d 520 (1986). Although I joined in *Hashimoto* and, indeed, in nearly every other decision of this court reviewing family court marital property divisions in divorce cases, I have gradually come to realize that the imposition of the USP on the family court judges is contrary to the

legislative intent of Hawaii Revised Statutes (HRS) § 580–47(a) (Supp. 1990).

HRS § 580–47(a) reads in pertinent part as follows:

Upon granting a divorce . . . the court may make such further orders as shall appear just and equitable . . . finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate[.] . . . In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

The statute, and its nearly identical predecessor, has been interpreted in a number of supreme court cases. The thrust of all those cases has consistently been that the division of the marital property under the statute is in the discretion of the trial court, and each case must be decided upon its own facts and circumstances. *See, e.g., Carson v. Carson*, 50 Haw. 182, 436 P.2d 7 (1967). In *Carson*, the supreme court also said that "the division and distribution of all property, including separate property, must be just and equitable[,]" *id.* at 184, 436 P.2d at 9, and that placing undue emphasis on any particular factor listed in the statute was an abuse of discretion. *Id.* So strongly has the supreme court adhered to the principle that the statute establishes the sole basis for division of marital property that it has stated:

There is *no fixed rule* for determining the amount of property to be awarded each spouse in a divorce action *other than as set forth in HRS § 580–47*.

*Au–Hoy v. Au–Hoy*, 60 Haw. 354, 357, 590 P.2d 80, 82 (1979) (emphasis added).

In my view, the USP, contrary to the line of supreme court cases, in fact establish a fixed rule governing the split of marital

property by the family court. Consequently, they violate the letter and the spirit of HRS § 580-47(a). Opinions by the supreme court in reviewing our decisions on *certiorari* support my view.

Although *Hashimoto* was the seminal case establishing the USP, the concept really had its genesis in *Mochida v. Mochida*, 5 Haw. App. 348, 691 P.2d 771 (1984), where we formulated "general rules" regarding division of marital property in divorce cases. In *Cassiday v. Cassiday*, 6 Haw. App. 207, 716 P.2d 1145 (1985), we put forth another general rule. In reviewing our decision on *certiorari*, the supreme court struck down the "rule," again referring to the discretion accorded to the family courts by HRS § 580-47(a) and the legislative intent that each case must turn on its own facts. *Cassiday v. Cassiday*, 68 Haw. 383, 716 P.2d 1133 (1986). In *Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988), another review of an intermediate court decision, the supreme court reaffirmed its decisions in *Carson*, *Au–Hoy*, and *Cassiday*, stating that it has "avoided, where possible, the adoption of general rules governing the division of marital assets." *Id.* at 149, 764 P.2d at 1241. In keeping with its rule of avoidance, the supreme court struck down "Category 6" established in *Woodworth v. Woodworth*, 7 Haw. App. 11, 740 P.2d 36 (1987), applied by the family court in *Myers*. However, the supreme court did not review the other five categories of USP.

In response to the supreme court's decision in *Cassiday*, we "relabeled" the "general rule" to USP. *Hashimoto*, 6 Haw. App. at 426, 725 P.2d at 522. The relabeling, in my view, did not change the nature of the USP; the USP remained a general rule. That the nature of the beast was not changed is indicated by our language in *Hashimoto*, where we stated:

> If family court judges are *required* to commence deciding in what proportion to equitably divide the value of the property from a uniform starting point, and to identify each of the factors that cause them to deviate and

award a different proportion, then their decisions will be more uniform and predictable and the process of appellate review under the abuse of discretion standard will be greatly facilitated.

*Id.* at 427, 725 P.2d at 523 (emphasis added).

Although each family court judge may view the facts of each divorce case differently, that is exactly what the statute allows them to do. The statute is based on a sound realization that there cannot be predictability in marital property splits because no two cases involve the same set of facts. It is up to the appellate courts to determine whether the result the family court reaches is within the bounds of reason, not whether the individual judge had started from the same point. Facilitation of that review is not the purpose of HRS § 580–47(a).

The standard of review in discretion cases is unquestionably of judicial origin as the majority points out. However, the USP overlook the fact that the legislature has accorded the family court a wide discretion not only to reach a just and equitable result, but also to determine, based on the facts in each case, where they will begin applying the factors of HRS § 580–47(a). In my view, the USP represent a restrictive approach to the division of marital property which the legislature did not intend and which we are powerless to impose, even under the guise of appellate review.

In my view, this case illustrates the unnecessary rigidity of the USP and is a clear demonstration of the USP "getting in the way" of the family court's decision process. The comments of the trial judge clearly indicate that, had he not felt bound by the USP, he not only would have ended up with a different result but would have started out differently. I do not deny that the trial judge apparently misunderstood the cases in which we explained the USP. However, it seems clear to me that, if it were not for the USP, he would have reached a different, more equitable result, a result we in all probability could have affirmed.