98 P.3d 274

**Tammie Naomi AOKI, Plaintiff–Appellee,**

v.

**Dean Takayuki AOKI, Defendant–Appellant.**

**No. 25417.**

Intermediate Court of Appeals of Hawai'i.

Sept. 2, 2004.

Pablo P. Quiban, Honolulu, on the briefs, for plaintiff-appellee.

Ronald P. Tongg, Honolulu, on the briefs, for defendant-appellant.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Dean Takayuki Aoki (Dean) appeals from the following orders, entered in the Family Court of the First Circuit by Judge William J. Nagle, III: the July 19, 2002 "Findings of Fact, Conclusions of Law and Order Re Trial on March 4, 2002" (July 19, 2002 FsOF, CsOL and Order); and the September 20, 2002 "Order Granting in Part and Denying in Part Defendant's Motion for Reconsideration and Enforcement of Pretrial Order No. [2] Filed February 28, 2002 and for Amendment of Findings of Fact, Conclusions of Law and Order Re Trial on March 4, 2002 to Include Further Orders" (September 20, 2002 Order).

Concerning both the July 19, 2002 FsOF, CsOL and Order, and the September 20, 2002 Order, (A) we affirm all those parts that pertain to (1) the dissolution of the marriage, (2) child custody, visitation, and support, and (3) spousal support; and (B) we dismiss the part that pertains to the division and distribution of property and debts because the lack of a final decision as to that part has resulted in a lack of appellate jurisdiction.

## RELEVANT PRECEDENT

■■■■ Hawaii divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts. *Black v. Black,* 6 Haw.App. 493, 728 P.2d 1303 (1986). In *Cleveland v. Cleveland,* 57 Haw. 519, 559 P.2d 744 (1977), the Hawaii Supreme Court held that an order which finally decides parts (1) and (4) is final and appealable even if part (2) remains undecided. Although we recommend that, except in exceptionally compelling circumstances, all parts be decided simultaneously and that part (1) not be finally decided prior to a decision on all the other parts, we conclude that an order which finally decides part (1) is final and appealable when decided even if parts (2), (3), and (4) remain undecided; that parts (2), (3), and (4) are each separately final and appealable as and when they are decided, but only if part (1) has

previously or simultaneously been decided; and that if parts (2), (3), and/or (4) have been decided before part (1) has been finally decided, they become final and appealable when part (1) is finally decided.

*Eaton v. Eaton,* 7 Haw.App. 111, 118–19, 748 P.2d 801, 805 (1987) (footnote omitted).

Under general partnership law, "each partner is entitled to be repaid his [or her] contributions to the partnership property, whether made by way of capital or advances." 59A Am.Jur.2d Partnership § 476 (1987) (footnotes omitted). Absent a legally permissible and binding partnership agreement to the contrary, "partners share equally in the profits of their partnership, even though they may have contributed unequally to capital or services." Id. § 469 (footnotes omitted).... [Hawai'i] partnership law provides in relevant part as follows:

**Rules determining rights and duties of partners.** The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them by the following rules:

(a) Each partner shall be repaid the partner's contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to the partner's share of the profits.

*Jackson v. Jackson,* 84 Hawai'i 319, 333–34, 933 P.2d 1353, 1367–1368 (App.1997) (citations omitted).

In divorce cases, the five categories of net market values (NMVs) are as follows:

Category 1. The [NMV], plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 2. The increase in the NMV of all property whose NMV on the DOM is in-

cluded in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT [date of the conclusion of the evidentiary part of the trial].

Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.

Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

*Tougas v. Tougas,* 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994) (internal citations omitted).

Under the Partnership Model, assuming all valid and relevant considerations are equal,

> 1. The Category 1 and 3 NMVs are the "partner's contributions" to the Marital Partnership Property that, assuming all valid and relevant considerations are equal, are repaid to the contributing spouse; and

> 2. The Category 2, 4, and 5 NMVs are Marital Partnership Property that, assuming all valid and relevant considerations are equal, are awarded one-half to each spouse.

*Hussey v. Hussey,* 77 Hawai'i 202, 207–08, 881 P.2d 1270, 1275–76 (App.1994). We label this *Hussey* division the Partnership Model Division.

Thus, under the Partnership Model Division, Category 2, 4, and 5 NMVs are divided 50% to the owner and 50% to the nonowner. *Id.*

The Partnership Model requires the family court, when deciding the division and distribution of the Marital Partnership Property of the parties part of divorce

cases, to proceed as follows: (1) find the relevant facts; start at the Partnership Model Division and (2)(a) decide whether or not the facts present any valid and relevant considerations authorizing a deviation from the Partnership Model Division and, if so, (b) itemize those considerations; if the answer to question (2)(a) is "yes," exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation.

Question (2)(a) is a question of law. The family court's answer to it is reviewed under the right/wrong standard of appellate review. Questions (3) and (4) are discretionary matters. The family court's answers to them are reviewed under the abuse of discretion standard of appellate review.

*Jackson,* 84 Hawai'i at 332–33, 933 P.2d at 1366–1367 (footnote omitted).

## BACKGROUND

Dean and Plaintiff–Appellee Tammie Naomi Aoki (Tammie) were married on April 10, 1982. A son was born on May 4, 1984, a daughter was born on March 18, 1987, and another son was born on June 16, 1989. On November 27, 2000, Tammie filed a complaint for divorce.

On January 10, 2001, pursuant to the agreement of the parties, Judge Christine A. Kuriyama entered an order (January 10, 2001 Order) stating, in relevant part, as follows:

(1) Until further order of the Court, the parties are awarded temporary joint legal custody with [Tammie] having tie-breaking authority; provided, however, the parties may return to court for a hearing on this issue if [Tammie] abuses that authority by making decisions without regard to [Dean's] input knowing that she has the ultimate say.

(2) Until further order of the court, [Tammie] shall have temporary physical custody subject to [Dean] having reasonable rights of visitation[.]

On February 28, 2002, after a settlement conference on February 14, 2002, Judge Bode A. Uale entered Pretrial Order No. 2 which states "the existing agreements, made by, and the disputed issues between, the parties."

Regarding custody of the children, the disputes of the parties pertained to the following questions: Should Dean be awarded joint legal custody? Should Dean's visitation be reasonable or Type A? Should Dean be required to pay for the "extra-ord[inary] expenses [for child health care] which are not covered by health care insurance" and "are not agreed to" by him? What expenses are included within the children's "educational expenses"?

Regarding property and debts, the following are some of the agreements: "[Dean] has $168,586 Category 1 and 3 property";[1] "Lokahi residence [(Lokahi Property)] awarded to [Dean] subject to encumbrances thereon. [Dean] to remove [Tammie] from mortgage and helpline"; and "[e]ach party shall pay debts standing in his/her name alone. [Dean] shall pay mortgage on [the Lokahi Property], helpline debt, and close and pay AIA charge card. [Tammie] shall close and pay Discover charge card."

Pretrial Order No. 2 further states that the parties have agreed that, with respect to the division and distribution of property and debts, the

[o]nly issue is whether there are any valid and relevant considerations ("VARCS") to deviate from payment of the remaining equalization payment of $38,017, which is the equalization payment of $86,927 shown on [Dean's] property division chart less the equalization value of the Honda Civic ($2,910) and less $46,000[2] for the $10,000 bond (line 4.02) and the life insurance cash values (lines 7.03, 7.04 and 7.06). Said $38,017 is subject to determination by trial court of the value of the jewelry. The $38,017 is based upon the jewelry being valued at $29,500. (Property Division Chart is appended hereto as Attachment A.)

Pretrial Order No. 2 did not state the alleged VARCS. The "appended ... Attachment A" was "Defendant's Property Division Chart". It allocated the undisputed $165,150 value of one-half of the Lokahi Property as follows:

| | Dean | Tammie |
|---|---|---|
| Dean's inheritance | $105,000 | |
| Increase in value | $ 30,075 | $30,075 |

It also allocated the disputed $29,500 value of the jewelry one-half to Dean and one-half to Tammie.

The trial occurred on March 4, 2002.

With those parts challenged by Dean in this appeal italicized, the July 19, 2002 FsOF, CsOl and Order states, in relevant part, as follows:

1. According to Attachment A of Pretrial Order No. 2, $105,000 of the $168,586 was a Category 1 net market value (NMV) attributable to the "845 Lokahi St. [(Lokahi Property)] Inheritance" and the remaining $63,587 was the total of the following Category 1 and 3 NMVs:ITEM CATEGORY VALUE

| ITEM | CATEGORY | VALUE |
|---|---|---|
| United States Life Insurance Benefit | 1 | $ 2,518 |
| Pearl Harbor FCU Insurance Benefit | 1 | $ 1,000 |
| Pearl Harbor FCU Shares | 1 | $ 3,261 |
| Social Security Death Benefits | 1 | $   255 |
| Minn[e]sota Mutual Life Insurance Benefits | 1 | $ 4,032 |
| Pacific Mutual Life Insurance Benefit | 1 | $ 5,586 |
| Office of Federal Employees' Group L.I. | 1 | $20,396 |
| Veterans Administration Government L.I. | 1 | $10,237 |
| Aetna Life & Casualty L.I. | 1 | $ 1,004 |
| Naval Supply Center Unpaid Compensation | 1 | $ 4,089 |
| Remaining Balance in Estate Account | 1 | $   629 |
| Civil Service Retirement System | 1 | $ 5,580 |
| Central Pacific Bank Cashier's check | 3 | $ 5,000 |

2. The total of the dollar value of the $10,000 bond, the $10,385 life insurance, the $13,580 life insurance, and the $12,155 life insurance is $46,120.

Based upon the testimony of the witnesses, the exhibits admitted into evidence and considering and evaluating the credibility of the witnesses and the weight to be given the evidence, the Court enters the following Findings Of Fact.

. . . .

4. Concerning the residence at 845 Lokahi Street ("the Lokahi Property"), it is undisputed by the parties that the Lokahi Property was bequeathed to DEAN and Mavis Naomi Nakabayashi, DEAN'S sister, as tenants in common, by their father upon his death in 1981. On or about October, 1992, Mavis, as First Party, TAMMIE and DEAN as the collective Second Party, and United Exchange as the Exchange Party, entered into an Exchange Agreement by which Mavis transferred her 50% interest in the Lokahi Property in consideration of the payment of $282,500 by TAMMIE and DEAN. By using a § 1031 Internal Revenue Code exchange, Mavis was able to defer the income tax consequences on the transfer of her interest into the future.

5. On or about October 28, 1992, DEAN and Mavis executed a Warranty Deed, in which both persons sold, conveyed and transferred their respective 50% tenant in common interests in the Lokahi Property to United Exchange. There is no explanation for why DEAN conveyed his interest in the Lokahi Property to United Exchange, since DEAN was not selling or conveying his interest; however, DEAN retained no interest by the terms of the Warranty Deed. On or about October 29, 1992, United Exchange conveyed all of the right, title and interest in the Lokahi Property to TAMMIE and DEAN "as Tenants in Common, in **equal shares and proportions,** without rights of survivorship". . . . In other words, United Exchange conveyed equal 50% shares of the Lokahi Property to TAMMIE and DEAN in separate estates, as tenants in common, and not as tenants by the entirety. According to the evidence submitted to the Court, no modification of the October 29, 1992 [conveyance] has been prepared, filed or otherwise entered which changes the ownership share, estate or interest of ei-

ther TAMMIE or DEAN. It is also undisputed that TAMMIE and DEAN obtained a loan in the amount of $282,500 to purchase Mavis' share of the Lokahi Property, secured by a mortgage on the property and improvements. *In summary, although the parties described their ownership interest in the Lokahi Property as divided 75% for DEAN and 25% for TAMMIE, the Court finds that they hold equal, 50% ownership shares in the Lokahi Property as tenants in common.*

6. DEAN calculates that the market value of the Lokahi Property is $330,00[0], based upon a purported City & County real property tax appraisal of the property and improvements for 2001. Exhibit "CC". However, the Lokahi Property is encumbered by a mortgage in the amount of $260,400, representing the remaining amount borrowed by TAMMIE and DEAN from City Bank, the mortgagee. TAMMIE has introduced no evidence on the present market value of the Lokahi Property. Neither party has introduced evidence of any **increase or decrease** in the market value of the real property between the date of marriage and date of trial. The Court notes that the value of Mavis' one-half interest in the property in 1992 was $282,500, the sales price for her interest to DEAN and TAMMIE; the market value of both DEAN's equal 50% share prior to the exchange would therefore be an equal amount and the total market value of the property in 1992 approximates $565,000. It is frankly inconceivable to the Court that real estate in Hawaii, especially in the metropolitan Honolulu area, could lose nearly 50% of its market value over the past 10 years. Moreover, the Court is disinclined to accept DEAN'S calculation of the market value of the property as reflective of the tax-assessed value, as the tax assessed value of any real property represents at best a conservative figure based upon transfers of real property in the general vicinity. *For these reasons, the Court finds that additional information on any increase or decrease in the value of the real property and improvements, is required.*

7. It is undisputed between the parties that TAMMIE provides the principal parental presence for children, since the January 10, 2001 Order. The children live with her; she makes the principal decisions on their welfare, schedules and lives. TAMMIE has paid for their medical treatment,.... It is further undisputed that DEAN has not taken the children on his allotted dates and times of visitation; he has not telephoned the children; DEAN has also objected to contributing an equal share of the children's extraordinary medical expenses, due to his perception that he should not be compelled to pay for "elective" procedures. While DEAN claims that he was denied the opportunity to share time with his children by TAMMIE'S RELATIVES, it is also undisputed that DEAN has not sought intervention from the Court to enforce his visitation rights. As a practical matter, the parties agree that there has been **no communication,** personal or telephonic between the parties concerning the children, or any other aspect of their relationship. *On the basis of the undisputed lack of communication between the parties as well as DEAN's failure to interact, contact, communicate and exercise visitation with the children, the Court finds that a material change in circumstances has occurred since the January 10 Order pendente lite. The best interests of the minor children dictate that a change in the custodial portion of the January 10 Order be made.*

. . . .

9. *While the parties may believe that the specific issues in dispute are relatively simple, the Court finds that values placed on certain assets, and the characterization of property as "Category 1" or "Category 3" is contradicted or contra-indicated by the evidence submitted at trial, particularly the defense Exhibits.* An apt illustration of the contradiction is the language in the Warranty Deed conveying ownership in equal shares to TAMMIE and DEAN apparently as marital separate property, while the parties have characterized the ownership shares as other than equal, and marital partnership property, at least in part. DEAN's proffered valuation of the Lokahi [Property] based upon the City & County appraised value must be rejected by the Court, since the tax appraised value is not indicative of the net market value of this asset. Another example is the jewelry appraisal dated August 11, 1987 which DEAN would have the Court adopt as the present net market value of TAMMIE's wedding ring (Exhibit "PP"). The Court declines to accept such an outdated and obviously unreliable value of the ring and based upon the weight of the evidence, agrees with TAMMIE that the present date net market value of the ring is no more than $8,000. *Moreover, the Court cannot reach TAMMIE's request for a deviation from a strictly equal sharing of the marital assets without inquiry into the value of the assets and debts.*

10. *The Court finds that the assets claimed by DEAN as Category "1" or "3" property, excluding the Lokahi [Property], are cash payments by third parties resulting from the death of DEAN'S father. While DEAN can account for the origin of these funds, he has failed to establish that these assets were contributed to the marital estate; that they still exist at the Date of the Conclusion of the Evidentiary Part of the Trial, and, further, that any of these assets have increased or decreased in value. DEAN's testimony at trial did not include evidence on what marital partnership accounts the purported Category "1" or "3" property were deposited; therefore, the Court is left to speculate on which of the marital partnership property accounts (Exhibit "2", p. 1) contain these Category "1" and "3" assets.* Assuming that DEAN has somehow established that these cash assets were contributed to the marital estate, his calculation of the division of the marital partnership property would essentially provide him with the greater proportion of the marital partnership liquid accounts, while at the same time, penalizing TAMMIE by giving himself a deduction based upon the purported value of the Category "1" and "3" assets from the same marital partnership accounts. That's called having your cake and eating it too. *The Court finds that DEAN has not estab-*

*lished by competent evidence that the assets listed on p. 2 of Exhibit "2" are, in fact, Category "1" and "3" property and therefore declines to approve his deduction of such assets from marital partnership accounts.*

. . . .

Based upon the Court's Findings Of Fact stated above, the Court makes the following Conclusions Of Law.

*A. It is in the best interests of the minor children that TAMMIE be awarded sole legal and physical custody of the minor children, subject to DEAN's rights of visitation as set out in the Court's January 10, 2001 Order.*

*B. The Lokahi [Property] is Category "1" property of DEAN as to one half of the net market value; and Category "3" property of TAMMIE as to one half of the net market value, subject to the encumbrance of the mortgage on both interests.* The evidence provided by the parties at the trial was incompetent for a determination of the present day net market value, and therefore, the Court orders that the parties provide the Court with evidence demonstrating the increase or decrease in value of the real property from the DOM to the date of trial.

*C. DEAN has not demonstrated that he is entitled to a return of the assets which he claims as Category "1" or "3", excluding the Lokahi [P]roperty, and the Court therefore declines to order such an offset.*

*D. The Court awards to the parties the property identified in DEAN's proposed allocation on Exhibit "2" with the following exceptions.*

*(1) TAMMIE and DEAN are each awarded a 50% share of the value of the Lokahi [Property] in 1992 (no less than $285,000), subject to the mortgage of City Bank (line item 11.17) and, if applicable, the line of credit indebtedness of City Bank (line item 11.18).*

*E. In light of the Court's disposition of the marital and separate assets and debts of the parties, the Court declines to order* *an equitable adjustment of the parties' property division.*

*F.* Each party shall bear their own attorneys fees and costs.

Based upon the above-stated Findings Of Fact and Conclusions Of Law,

IT IS HEREBY ORDERED that a divorce is granted to TAMMIE, that the bonds of matrimony be, and hereby are, dissolved and the parties are restored to the status of single persons.[3]

IT IS FURTHER ORDERED that [the] parties present evidence concerning the increase or decrease in market value of the Lokahi [Property] within 60 days of this Order. In the event that neither party submits evidence of such increase or decrease, the Court will conclude that the value of the property has not changed. If the parties disagree as to such increase or decrease, or the amount thereof, the Court will set a further hearing to resolve that issue upon request of either party. In all other respects, the parties are awarded the marital and separate property as described above, subject to such indebtedness or encumbrance as is described.

(Footnote added; footnote omitted; emphasis in original.)

On July 24, 2002, Dean filed "Defendant's Motion for Reconsideration and Enforcement of Pretrial Order No. 2 Filed February 28, 2002 and for Amendment of Findings of Fact, Conclusions of Law and Order Re Trial on March 4, 2002 to Include Further Orders" (July 24, 2002 Motion) asking:

1. For reconsideration of that part of its Findings Of Fact, Conclusions Of Law And Order Re Trial On March 4, 2002 entered herein on July 19, 2002, which had to do with issues not before the Court for trial on March 4, 2002 and enforcement of Pretrial Order No. 2 filed herein on February 28, 2002; and

2. For amendment of its Findings Of Fact, Conclusions Of Law And Order Re Trial On March 4, 2002 entered herein on July 19, 2002 to include further orders regarding issues that were before the

---

**3.** In other words, this is the document that dis- solved the marriage.

Court for trial on March 4, 2002 but not addressed by the Court.

On August 5, 2002, Tammie filed "Plaintiff's Memorandum in Opposition to Defendant's Motion for Reconsideration and Enforcement of Pretrial Order No[.] 2 Filed February 28, 2002 and for Amendment of Findings of Fact, Conclusions of Law and Order Re Trial on March 4, 2002 to Include Further Orders." In the memorandum, Tammie argued in relevant part as follows:

> In this case, [Dean] is seeking a reconsideration of the trial court's ruling with respect to the award of the Lokahi [Property]. Although there was an agreement by the Pretrial Order No. 2 as to the award of the Lokahi [Property] to [Dean], the parties both disputed and presented evidence regarding the property's increase in market value and current market value, which directly involves the real property.[4] Thus, the issue regarding the market value and current market value of the Lokahi [Property] was properly before the trial court, and the trial court had jurisdiction to make a ruling. There is no unusual circumstances [sic] cited to by [Dean] in his motion, and thus the motion for reconsideration should be denied.
>
> . . . .
>
> . . . With respect to the issues cited by [Dean] in his motion that he alleges the trial court did not address, these matters can easily [be] addressed in a written Decree Granting Absolute Divorce And Awarding Child Custody, which must still be submitted by the parties to incorporate the trial court's ruling.

(Footnote added.)

After a hearing on August 14, 2002, the court entered the September 20, 2002 Order. With the part challenged by Dean in this appeal italicized, the September 20, 2002 Order states, in relevant part, as follows:

> IT IS HEREBY ORDERED that the Motion be, and hereby is granted in part and denied in part. The Motion is granted as to the following issues:

. . . .

> 4. *TAMMIE'S income tax refunds are awarded to her. The Court awards the tax dependency exemptions for the minor children to TAMMIE.*

> The Motion is denied as to all other issues raised. As to the Lokahi [Property], the Court notes that the recorded deed to the property remains the only evidence of the parties' ownership interests in and to the subject property and improvements. Because the deed has never been modified, altered or reformed to reflect DEAN'S present contentious [sic], any "agreement" between counsel variance to the terms of the deed remains incapable of altering the parties' ownership interest, in the property and improvements. The Court further notes that DEAN sought to, and succeeded in having the deeds admitted as evidence; once admitted as evidence, the Court must decide the issues presented based upon the documentary and testimonial evidence at trial, not on "agreement of counsel".

On October 18, 2002, Dean filed a notice of appeal. This appeal was assigned to this court on May 19, 2003.

## DISCUSSION

### A.

Dean challenges the court's decision that,

> [o]n the basis of the undisputed lack of communication between the parties as well as DEAN's failure to interact, contact, communicate and exercise visitation with the children, the Court finds that a material change in circumstances has occurred since the January 10 Order pendente lite. The best interests of the minor children dictate that a change in the custodial portion of the January 10 Order be made.

Dean contends that these could not have been "a material change in circumstances" because this "was the same situation that existed at the time joint legal custody to the parties was ordered."

---

**4.** In other words, Plaintiff–Appellee Tammie Naomi Aoki agrees that she and Defendant–Appellant Dean Takayuki Aoki did not dispute the amount of Dean's Category 1 NMV of the Lokahi Property (which was one-half of the date of marriage NMV of the Lokahi Property) and that their only dispute pertained to the NMV at the time of the divorce.

■ Dean's argument is premised on the law of the case doctrine. According to this doctrine, "unless cogent reasons support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion." *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 135, 920 P.2d 334, 349 (1996) (quoting *Wong v. City & County of Honolulu*, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) (internal brackets and quotation marks omitted; emphasis in original)). This doctrine is "a rule of practice based on considerations of efficiency, courtesy, and comity." *Id.* It is not completely inflexible, however, since a judge is allowed to modify a prior decision of another judge if either cogent reasons support such a modification, or exceptional circumstances are present. *Tradewinds Hotel, Inc. v. Cochran*, 8 Haw.App. 256, 264, 799 P.2d 60, 66 (1990).

We conclude that the July 19, 2002 FsOF, CsOL and Order was not a "modification" of the January 10, 2001 Order because the January 10, 2001 Order was a "temporary" decision made only for the time pending trial and/or the "permanent" decision. In contrast, the July 19, 2002 FsOF, CsOL and Order was the "permanent" decision made after a trial on the merits.

■ It appears that both the court and Dean are of the erroneous view that the court was not authorized to change the terms of the January 10, 2001 Order pertaining to legal and physical custody and visitation of the children absent a material change in circumstances. It appears that both fail to recognize that, because the January 10, 2001 Order expressly awarded only "temporary joint legal custody" and "temporary physical custody subject to [Dean] having reasonable rights of visitation," a material change in circumstances was not a prerequisite to a different "permanent" award. With respect to the legal and physical custody of children, temporary decisions involve different considerations than permanent decisions.

## B.

Dean challenges the court's decision not to proceed in accordance with Pretrial Order No. 2 when dividing and distributing the property and debts of the parties.

In the answering brief, Tammie argues:

[Dean] asserts that the Family Court abused its discretion by not following the agreements of the parties in Pretrial Order No. 2. However, the Family Court did not disturb the agreements contained in the Pretrial Order No. 2. Instead, what the Family Court found was that neither of the parties had carried their burden of proof for the court to rule according to the deviation from the Marital Partnership Model proposed by each of the parties. In its ruling, the Family Court made a division that did not clearly exceed the bounds of reason or disregard rules or principles of law, thus the Family Court's ruling should not be disturbed.

Query the validity of Tammie's conclusion that "the Family Court did not disturb the agreements contained in the Pretrial Order No. 2."

Dean initially owned one-half of the Lokahi Property with his sister. Pretrial Order No. 2 states that when Dean and Tammie married, the NMV of Dean's one-half was $105,000. This is Dean's Category 1 NMV. Query whether the fact that, after Dean and Tammie purchased the interest of Dean's sister, Dean owned one-half and Tammie owned the other half is substantial evidence that Dean gifted all or any part of his Category 1 NMV to Tammie. In *Gussin v. Gussin*, 73 Haw. 470, 488–89, 836 P.2d 484 (1992), the Hawai'i Supreme Court stated, in relevant part, as follows:

The ICA's analysis of the gift issue in this case is inconsistent with what it required of the family court in *Bennett v. Bennett*, 8 Haw.App. 415, 807 P.2d 597 (1991). In *Bennett*, the family court found that a premarital cash contribution made towards the purchase of a marital residence was a gift. Upon review of the family court's decision, the ICA remanded the case for the family court to determine whether all of the essential elements of a legal gift from wife to husband were met. *Id.* at 425, 807 P.2d at 603. The ICA stated:

The questions for the family court to decide were:

. . . .

2. Did [wife] legally gift any part of the NMV of her DOM cash and receivable to [husband] during the marriage? More specifically, when [wife] used her DOM cash and receivable in the purchase of 59–003 Holawa Place in joint ownership with [husband], did she legally gift the amount used, or any portion thereof, to [husband]? **To constitute a gift, the essential elements are (1) donative intent, (2) delivery, and (3) acceptance.** . . .

*Id.* (emphasis added and citations omitted).

Because the family court failed to make any findings as to donative intent or any other element bearing on whether a legal gift had been made, we conclude that the ICA erred in not remanding the issue of gift for the family court to decide.

Pretrial Order No. 2 states that, when Dean and Tammie married, the Category 1 net market value (NMV) of Dean's one-half was $105,000. Dean presented evidence that the NMV of the Lokahi Property at the time of the trial was $330,000. As noted by the court, Tammie introduced no evidence of the relevant NMV of the Lokahi Property. Query the validity of the court's finding, in FOF no. 6, that "[n]either party has introduced evidence of any **increase or decrease** in the market value of the real property between the date of marriage and date of trial[.]" (Emphasis in original.)

Regarding the Lokahi Property, the issue in dispute is its NMV at the time of trial. Query whether it is within the court's discretion to order "that [the] parties present evidence concerning the increase or decrease in market value of the Lokahi Street property within 60 days of this Order." In a civil case, is it within the court's discretion to order the party with the burden of proof to satisfy that burden of proof and hold that party in contempt and sanction that party for not complying with that order? Does not the law, rather than the court, impose the burden of proof and the consequences of the failure to satisfy the burden of proof?

It is within the court's discretion:

1. To allow the parties more time to present credible evidence relevant to the NMV of the Lokahi Property at the time of trial. *Benezet v. Nowell,* 42 Haw. 581, 584 (1958).

2. To inform the parties that

[i]n the event that neither party submits evidence of such increase or decrease [within 60 days of this Order], the Court will conclude that the value of the property has not changed. If the parties disagree as to such increase or decrease, or the amount thereof, the Court will set a further hearing to resolve that issue upon request of either party[.]

3. To appoint one or more experts to aid it in its deliberations. *Kamahalo v. Coelho,* 24 Haw. 689, 694 (1919). Rule 614, Hawai'i Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2003), permits the following:

**Calling and interrogation of witness by court.** (a) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

(b) Interrogation by court. The court may interrogate witnesses, whether called by itself or by a party.

(c) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

On this subject, however, the following precedent is relevant: "As to the right of the court to assume the general superintendence and control of the litigation before it, while we are not inclined to deny the power in *toto,* still less are we inclined to encourage its exercise." *Kamahalo v. Coelho,* 24 Haw. 689, 694 (1919).

FOF no. 10 states, in relevant part, as follows:

10. The Court finds that the assets claimed by DEAN as Category "1" or "3" property, excluding the Lokahi [Property], are cash payments by third parties resulting from the death of DEAN'S father. While DEAN can account for the origin of these funds, he has failed to establish that these assets were contributed to the mari-

tal estate;.... DEAN's testimony at trial did not include evidence on what marital partnership accounts the purported Category "1" or "3" property were deposited;.... The Court finds that DEAN has not established by competent evidence that the assets listed on p. 2 of Exhibit "2" are, in fact, Category "1" and "3" property and therefore declines to approve his deduction of such assets from marital partnership accounts.

The "assets" in question are listed in footnote 1 above. Pretrial Order No. 2 states that the NMVs of these assets are Category 1 or 3 NMVs. In other words, it states that these assets were contributed to the marital estate. Query the validity of the court's apparent conclusion that, notwithstanding Pretrial Order No. 2 and no prior notice to Dean that Pretrial Order No. 2 was not binding on the court at trial, Dean was required to present evidence that these assets were contributed to the marital estate.

In FOF no. 10, the court finds that "the Court is left to speculate on which of the marital partnership property accounts (Exhibit '2', p. 1) contain these Category '1' and '3' assets" and that Dean failed to establish that these assets "still exist at the Date of the Conclusion of the Evidentiary Part of the Trial, and, further, that any of these assets have increased or decreased in value." These findings ignore that the relevant question is whether these are Category 1 or 3 NMVs. Even assuming the answer to that question in Pretrial Order No. 2 is not binding on the court pursuant to the law of the case doctrine, query whether the questions whether these assets "still exist at the Date of the Conclusion of the Evidentiary Part of the Trial, and, further, that any of these assets have increased or decreased in value" are relevant questions.

In FOF no. 10, the court states that

[a]ssuming that DEAN has somehow established that these cash assets were contributed to the marital estate, his calculation of the division of the marital partnership property would essentially provide him with the greater proportion of the marital partnership liquid accounts, while at the same time, penalizing

TAMMIE by giving himself a deduction based upon the purported value of the Category "1" and "3" assets from the same marital partnership accounts. That's called having your cake and eating it too.

In light of this finding, query whether the court disagrees with the Partnership Model precedent stated in *Jackson v. Jackson*, 84 Hawai'i 319, 933 P.2d 1353 (App.1997) quoted above. If so, query whether such disagreement is authorized.

Dean contends that the court abused its discretion when it did not equalize between the parties, Tammie's income tax refunds for tax year 2001 as well as the tax benefits from the tax dependency exemptions for the three children of the parties. He contends that he should be awarded one-half of the 2001 tax refunds, and the 2001 tax dependency exemption for one of the three children. Query whether Dean understands the extent of the court's discretion in such matters.

### C.

We conclude that we have appellate jurisdiction over the following discrete parts of this divorce case: (1) dissolution of the marriage; (2) child custody, visitation, and support; and (3) spousal support. We conclude that we do not have appellate jurisdiction over the following discrete part of this divorce case: (4) division and distribution of property and debts. These conclusions are based on the following reasoning.

The statement in the July 19, 2002 FsOF, CsOL and Order that "IT IS HEREBY ORDERED that a divorce is granted to TAMMIE, that the bonds of matrimony be, and hereby are, dissolved and the parties are restored to the status of single persons" finally dissolved the marriage and caused the July 19, 2002 FsOF, CsOL and Order to be the dissolution of the marriage. The July 19, 2002 FsOF, CsOL and Order also finally decided child custody, visitation, child support, and spousal support. The question is whether it finally decided the division and distribution of property and debts. In it, the court ordered that

[i]n the event that neither party submits evidence of such increase or decrease

[within 60 days of this Order], the Court will conclude that the value of the property has not changed. If the parties disagree as to such increase or decrease, or the amount thereof, the Court will set a further hearing to resolve that issue upon request of either party.

In light of this order, did the court finally decide the division and distribution of property and debts and, if so, when?

▮ Nothing in the record indicates that either party submitted evidence of such increase or decrease. In the July 19, 2002 FsOF, CsOL and Order, the court stated that if neither party submits such evidence, "the Court will conclude that the value of the property has not changed." This is a promise of future action. Neither it, nor the finality of the court's decision regarding part (4) division and distribution of property and debts of this divorce case were automatic or guaranteed and, until the court fulfilled its promise and took its promised action, the court retained jurisdiction to amend or change either or both. Thus, the division and distribution of property and debts part of this case has not been finally decided and we do not have appellate jurisdiction over that part of this case.

## CONCLUSION

Accordingly, regarding the July 19, 2002 "Findings of Fact, Conclusions of Law and Order Re Trial on March 4, 2002" and the September 20, 2002 "Order Granting in Part and Denying in part Defendant's Motion for Reconsideration and Enforcement of Pretrial Order No. [2] Filed February 28, 2002 and for Amendment of Findings of Fact, Conclusions of Law and Order Re Trial on March 4, 2002 to Include Further Orders," (A) we affirm all those parts that pertain to (1) the dissolution of the marriage, (2) child custody, visitation, and support, and (3) spousal support; and (B) we dismiss the part that pertains to the division and distribution of property and debts for lack of a final decision and appellate jurisdiction.