120 P.3d 269

**Suzanne Marie ROSALES,
Plaintiff–Appellant,**

v.

**Arnold G. ROSALES, Jr.,
Defendant–Appellee.**

**No. 26450.**

Intermediate Court of Appeals of Hawaiʻi.

Aug. 22, 2005.

Lynnae Lee and Paul D. Hicks (Law Office of Lynnae Lee & Associates), on the briefs, for Plaintiff–Appellant.

Randall Y. Yamamoto and Carter K. Siu (Watanabe, Ing, Kawashima & Komeiji, LLP), on the briefs, for Defendant–Appellee.

BURNS, C.J., LIM and FUJISE, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant Suzanne Marie Rosales (Suzanne) appeals from the February 13, 2004 Order Granting Defendant Arnold G. Rosales, Jr.'s Motion for Issuance of Domestic Relations Order Filed on January 6, 2004 (February 13, 2004 Order), entered by Judge Bode Uale. We affirm in part, vacate in part, and remand with instructions.

## BACKGROUND

The September 22, 1986 Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree) terminating the marriage of Suzanne and Defendant–Appellee Arnold G. Rosales, Jr. (Arnold) states, in relevant part, as follows:

C.  PENSION RETIREMENT PAY

[Arnold] has submitted himself to the jurisdiction of the Family Court of the First Circuit of the State of Hawaii to make binding orders dividing the interests the parties have in the retirement benefits which have been accumulated during the marriage of the parties.

. . . .

Upon [Arnold's] retirement from the State Farm Insurance Company, [Suzanne] shall receive in the form of an allotment made payable directly to [Suzanne] from the Program Administrator a percentage of [Arnold's] gross retirement pay. Said percentage shall be determined according to a formula of $20/N \times 0.5 = X$ where $N$ = the number of years [Arnold] is credited with at retirement for retirement pay purposes.

As an example, if [Arnold] retires and is credited with twenty-four (24) years of service for retirement purposes, [Suzanne] shall be entitled to 41.66% of said retirement pay computed as follows:

$20/24 = 0.8333 \times 0.5 = 41.66\%$

As an additional example, if [Arnold] retires and is credited with twenty-six and one-half (26 ½) years of service for retirement pay purposes, [Suzanne] shall be entitled to 37.74% of said retirement pay computed as follows:

$20/26.5 = 0.7547 \times 0.5 = 37.74\%$

The Court reserves jurisdiction to make appropriate allocation if the tax consequences are other than as contemplated.

On January 6, 2004, Arnold filed a motion for the issuance of a domestic relations order. The "Memorandum in Support of Motion" states, in relevant part, as follows:

After approximately 31 years of service at State Farm Insurance Company, [Arnold] was given an opportunity to take a severance package and was offered a State Farm Insurance Companies Early Retirement Severance Compensation Plan which, in addition to his normal retirement pay, included two (2) severance incentives: (1) an Early Retirement Incentive Enhancement and (2) a Social Security Supplement.

The Early Retirement Incentive Enhancement provided [Arnold] with, among other things, retirement enhancement pay, an additional 4 years of credited service and 3 years of age (for purposes of the early retirement reduction).

The Social Security Supplement is a monthly payment equal to the estimated monthly Social Security old age benefits [Arnold] would be receiving at age 62. This benefit would end when [Arnold] reached 62 years of age; the same time [Arnold] would begin to receive Social Security benefits.

With regards to his retirement benefits plan, [Arnold] opted to receive "Life Income with Ten Years Certain." This option allowed [Arnold] to receive retirement benefits for his lifetime; however, if he were to die before ten years had passed since first receiving benefits, [Arnold's] named beneficiary would receive the same amount of money for the remainder of the ten year period.

On July 1, 2003, [Arnold] officially retired at the age of 57.

On or about August 6, 2003, [Arnold] received a letter from Kristen Sligar, Manager Associate Services Center for State Farm Insurance Company, stating that he was to begin receiving his early retirement benefits of $4,510.90 (monthly gross amount); this was broken down into two payments, one totaling $3,173.90 (representing his un-enhanced retirement benefits of $2,460.38 plus the enhancement of $713.52) and the other totaling $1,337.00 (representing his "Social Security Supplement").

These two (2) payments are reflected in the Notice of Retirement Benefits paid to [Arnold] in August 2003, and the two payments reflect and document that they represent two distinct payments and two separate accounts (RB–2091–6093 and RB–2093–8657).

Sometime thereafter, [Suzanne] sent a copy of the Decree to State Farm Insurance Company. Upon receipt of the [D]ecree, State Farm Insurance Company withheld payment of any benefits to [Arnold].

On October 7, 2003, Thomas M. Deighan, counsel for State Farm Insurance Company notified [Arnold's] counsel that it would be withholding 50% of [Arnold's] total gross income (the retirement, the retirement enhancement pay, and Social Security Supplement) because of various uncertainties in the Decree. More specifically, Mr. Deighan stated that the Decree was not a Qualified Domestic Relations Order and that he would not authorize any other payment until a Domestic Relations Order was qualified by the Plan Administrator for the Retirement Plan.

(Citations to attached exhibits are omitted.)

After a hearing on January 28, 2004, the family court entered the February 13, 2004 Order which states, in relevant part, as follows:

2. [Arnold] is credited with thirty-five (35) years of service for retirement purposes;

3. [Suzanne] is entitled to 28.57% of [Arnold's] gross retirement pay;

4. [Arnold's] gross retirement pay does not include [Arnold's] retirement enhancement or Social Security Supplement;

. . . .

6. Should [Arnold] die within ten (10) years from the date of his retirement, [Suzanne] will receive a 28.57% share of the retirement payments made to [Arnold's] beneficiary for the remainder of those ten (10) years.

Suzanne filed a notice of appeal on March 15, 2004.

On March 22, 2004, the family court entered a Domestic Relations Order. It states, in relevant part, as follows:

THE COURT HEREBY FINDS AND ORDERS as follows:

1. The retirement plan to which this Order applies is the State Farm Insurance Companies Retirement Plan for United States Employees, hereinafter referred to as the "Plan."

. . . .

3. From the first day of the month next following the Determination Date and for as long as both [Arnold] and [Suzanne] are still living, [Suzanne] shall receive $702.93 [28.57% of $2,460.38] of the monthly retirement income benefit payable under Option B–Life Income With Ten–Years Certain. [Arnold] shall be entitled to the balance of the monthly retirement income benefit. If [Arnold] predeceases [Suzanne] before payments have been made under Option B for ten years, [Suzanne] or [Suzanne's] estate shall receive $702.93 a month (or the commuted value thereof, if benefits become payable to [Suzanne's] estate)[1] for the balance of the ten-year certain period. [Arnold's] designated beneficiary or estate shall receive the balance of the monthly retirement income benefit (or the commuted value thereof, if benefits become payable to [Arnold's] estate)[2] for the balance of the ten-year certain. If [Suzanne] predeceases [Arnold] before or after pay-

ments have been made under Option B for ten years, her interest in the monthly retirement income benefit shall revert to [Arnold].

4. [Suzanne] is entitled to no part of the Participant's Early Retirement Incentive Enhancement or Social Security Supplement payable under the terms of the Plan.

On May 3, 2004, the family court entered Findings of Fact Re: Defendant Arnold G. Rosales, Jr.'s Motion For Issuance of Domestic Relations Order Filed January 26, 2004. In relevant part, those findings state as follows:

1. [Suzanne] was married to [Arnold] for approximately 20 years.

. . . .

4. The Decree does not contain any language evidencing an intent by the parties to provide [Suzanne] with survivorship rights and/or benefits for her lifetime; nor does it provide [Suzanne] the choice to elect retirement income for her lifetime.

5. After approximately 31 years of service at State Farm Insurance Company [Arnold] was offered and accepted a severance package.

6. The severance package paid [Arnold] his normal retirement pay and two (2) severance incentives: an "Early Retirement Incentive Enhancement" and a "Social Security Supplement."

7. The "Early Retirement Incentive Enhancement" provided [Arnold] with, among other things, retirement enhancement pay, an additional 4 years of credited service, and 3 years of age (for purposes of the early retirement reduction).

8. This is an amount over and above the normal retirement benefits that [Arnold] would receive had he retired at age 62.

9. The "Social Security Supplement" provided [Arnold] with a monthly payment

1. The record does not explain the basis for the following language: "(or the commuted value thereof, if benefits become payable to [plaintiff-appellant Suzanne Marie Rosales' (Suzanne's)] estate)[.]"

2. The record does not explain the basis for the following language: "(or the commuted value thereof, if benefits become payable to [defendant-appellee Arnold G. Rosales, Jr.'s (Arnold's)] estate)[.]"

equal to the estimated monthly Social Security old age benefits [Arnold] would receive at age 62; this benefit would end when [Arnold] reached 62 years of age.

10. [Arnold] also opted to receive "Life Income with Ten Years Certain."

11. This option allowed [Arnold] to receive retirement benefits for his lifetime; however, if [Arnold] were to die before ten years had passed since first receiving benefits, [Arnold's] named beneficiary would receive the same amount of money for the remainder of the ten year period.

. . . .

13. On July 1, 2003, [Arnold] officially retired at the age of 57.

14. On or about August 6, 2003, [Arnold] received a letter from ... State Farm Insurance Company, stating that he was to begin receiving his early retirement benefits of $4,510.90 (monthly gross amount).

15. The benefits were divided into two (2) payments: one totaling $3,173.90 (representing [Arnold's] un-enhanced retirement benefits of $2,460.38 plus the enhancement of $713.52) and the other totaling $1,337.00 (representing the "Social Security Supplement").

16. After taxes, these amounts were reduced to $2,482.72 and $1,117.65.

17. These two payments[3] represent two distinct payments from two separate accounts "(RB–2091–6093 and RB–2093–8657 respectively)."

(Footnote added; citations to attached exhibits omitted.)

This appeal was assigned to this court on December 20, 2004.

## DISCUSSION

■ We conclude that the Divorce Decree awarded Arnold the sole discretion to decide when to retire and what retirement option(s) to take. Whenever Arnold retires and whatever retirement options Arnold takes, the Divorce Decree awarded Suzanne her part-

nership share percentage[4] of the gross retirement pay paid for Arnold's account from the State Farm Insurance Companies Retirement Plan, as and when it is distributed, for as long as it is distributed to Arnold, to Arnold's designated beneficiary, or to Arnold's estate. The Divorce Decree computed Suzanne's partnership share percentage as follows:

20 (number of years married)/35 (Arnold's number of years of service for retirement purposes) × 0.5 = 28.57%

Finding of fact no. 4 concludes that the Divorce Decree (a) does not contain any language evidencing an intent by the parties to provide Suzanne with survivorship rights and/or benefits for her lifetime, and (b) does not provide Suzanne the choice to elect retirement income for her lifetime.

Conclusion (b) is right.

■ Conclusion (a) assumes that the intent of the parties and the intent of the court are the same. It fails to recognize that to the extent that these intents differ, the court's intent is the relevant intent. The agreement of the parties merged into the Divorce Decree. *Jendrusch v. Jendrusch,* 1 Haw.App. 605, 609, 623 P.2d 893, 896 (1981). When interpreting a decree/judgment, the determinative factor is the intention of the court as gathered from all parts of the decree/judgment itself. *Id.* at 609, 623 P.2d at 897.

To the extent that conclusion (a) concludes that the Divorce Decree does not provide Suzanne with survivorship rights and/or benefits for her lifetime, it is right or wrong depending on Arnold's date of death and Suzanne's date of death. For example, the following sentence in paragraph 3 of the Domestic Relations Order is wrong: "If [Suzanne] predeceases [Arnold] before or after payments have been made under Option B for ten years, her interest in the monthly retirement income benefit shall revert to [Arnold]." In effect, this sentence erroneously concludes that Suzanne's interest in Arnold's

---

3. "These two payments" are (a) the $3,173.90 consisting of $2,460.38 in "unenhanced" benefits plus the $713.52 in "enhanced" benefits, and (b) the $1,337.00 Social Security Supplement.

4. For a description of the "partnership model share", see *Aoki v. Aoki,* 105 Hawai'i 403, 98 P.3d 274 (App.2004)

retirement benefits is no more than a life interest.

Suzanne and Arnold were married for twenty (20) years. Arnold was credited with thirty-five (35) years of service for retirement purposes. Therefore, Suzanne's partnership model share of Arnold's gross retirement pay is 28.57%. This partnership model share is not a life interest. As long as Arnold, his designated beneficiary, or his estate receive this gross retirement pay, Suzanne or her estate has a right to 28.57% of it, as and when it is distributed.

In response to Suzanne's challenge of findings of fact nos. 8 and 17, we conclude that both challenged findings are inconsequential.

■ In response to Suzanne's challenge of the February 13, 2004 Order, we conclude that the following part of it is wrong:

"4. [Arnold's] gross retirement pay does not include [Arnold's] retirement enhancement or Social Security Supplement[.]" On this subject, Arnold's answering brief states, in relevant part, as follows:

In this case, the Early Retirement Incentive Enhancement was part of the severance package that [Arnold] accepted as an incentive to retire early. [Arnold's] supplemental payment of $713.52 is not part of [Arnold's] pension.

. . . .

Much like the Early Retirement Incentive Enhancement, [Arnold's Social Security Supplement] was a benefit that was offered to [Arnold] *after* the dissolution of his marriage to [Suzanne]. [Suzanne] did not have a pre-existing right to . . . receive the Social Security Supplement at any time during her marriage to [Arnold].

(Emphasis in the original.)

We conclude that Arnold misunderstands. The Divorce Decree awarded to Suzanne a percentage of the gross retirement pay paid from the State Farm Insurance Companies Retirement Plan for Arnold's account, as and when it is distributed. In Arnold's case, that gross retirement pay includes, but is not limited to, all of the incentives paid to Arnold to motivate him to retire early. In Arnold's case, to motivate him to retire at the age of

57, his employer awarded him the gross retirement benefits he would have received had he waited to retire later. Thus, the denominator of the fraction for determining Suzanne's percentage share is thirty-five (35) and not thirty-one (31). Until he reaches the age of sixty-two (62), Arnold's gross retirement pay is the following:

| | |
|---|---|
| $2,460.38 | unenhanced retirement benefits |
| 713.52 | enhancement |
| 1,337.00 | Social Security Supplement |
| $4,510.90 | total monthly gross retirement pay |

and when he reaches the age of sixty-two (62), Arnold's gross retirement pay is the following:

| | |
|---|---|
| $2,460.38 | unenhanced retirement benefits |
| 713.52 | enhancement |
| $3,173.90 | total monthly gross amount |

If Arnold dies before ten years have passed since he first received benefits, Suzanne will continue to receive her partnership model percentage share of the amount of money paid from the State Farm Insurance Companies Retirement Plan for Arnold's account, as and when it is distributed, for the remainder of the ten year period. If Suzanne predeceases Arnold, her estate will receive the commuted value of Suzanne's partnership model percentage share of the monthly retirement income benefit payable to Arnold, his designated beneficiary or his estate under Option B–Life Income With Ten–Years Certain.

## CONCLUSION

Accordingly, item 4 of the February 13, 2004 Order Granting Defendant Arnold G. Rosales, Jr.'s Motion for Issuance of Domestic Relations Order Filed on January 6, 2004 is vacated. It states,

4. Defendant's gross retirement pay does not include Defendant's retirement enhancement or Social Security Supplement[.]

On remand, the vacated part shall be replaced by the following:

4. Defendant's gross retirement pay includes Defendant's retirement enhancement and Social Security Supplement[.]

Similarly, the following part of the March 22, 2004 Domestic Relations Order is vacated:

3. From the first day of the month next following the Determination Date and for as long as both the Participant and the Alternate Payee are still living, the Alternate Payee shall receive $702.93 [28.57% of $2,460.38] of the monthly retirement income benefit payable under Option B–Life Income With Ten–Years Certain. The Participant shall be entitled to the balance of the monthly retirement income benefit. If the Participant predeceases the Alternate Payee before payments have been made under Option B for ten years, the Alternate Payee or the Alternate Payee's estate shall receive $702.93 a month (or the commuted value thereof, if benefits become payable to the Alternate Payee's estate) for the balance of the ten-year certain period. The Participant's designated beneficiary or estate shall receive the balance of the monthly retirement income benefit (or the commuted value thereof, if benefits become payable to the Participant's estate) for the balance of the ten-year certain. If the Alternate Payee predeceases the Participant before or after payments have been made under Option B for ten years, her interest in the monthly retirement income benefit shall revert to the Participant.

4. The Alternate Payee is entitled to no part of the Participant's Early Retirement Incentive Enhancement or Social Security Supplement payable under the terms of the Plan.

On remand, the vacated part shall be replaced by the following:

3. From the first day of the month next following the Determination Date and until the Participant reaches the age of sixty-two (62), the Alternate Payee shall receive $1,288.76 (28.57% of $4,510.90) of the monthly retirement income benefit payable under Option B–Life Income With Ten–Years Certain. The Participant shall be entitled to the balance of the monthly retirement income benefit.

If and when the Participant reaches the age of sixty-two (62) and the payment of the Social Security Supplement is discontinued, the Alternate Payee shall receive $906.78 (28.57% of $3,173.90) of the monthly retirement income benefit payable under Option B–Life Income With Ten–Years Certain. The Participant shall be entitled to the balance of the monthly retirement income benefit.

If the Participant dies before ten years have passed since first receiving benefits, the Alternate Payee shall continue to receive her percentage share of the monthly retirement income benefit payable under Option B–Life Income With Ten–Years Certain, for the remainder of the ten year period. The Participant's designated beneficiary or estate shall receive the balance of the monthly retirement income benefit (or the commuted value thereof, if benefits become payable to the Participant's estate) for the balance of the ten-year certain.

If the Alternate Payee predeceases the Participant, her estate shall receive the commuted value of the Alternate Payee's percentage share of the monthly retirement income benefit payable under Option B–Life Income With Ten–Years Certain to the Participant, his designated beneficiary or his estate.

We affirm in all other respects.