146 P.3d 597

Janice Lynn SUSSMAN,
Plaintiff–Appellee,

v.

Roger Lee SUSSMAN, Defendant–
Appellant.

No. 27293.

Intermediate Court of Appeals of Hawai'i.

Aug. 8, 2006.

As Corrected Aug. 11 and Aug. 22, 2006.

Certiorari Dismissed Dec. 18, 2006.

Alan G. Warner, Haiku, and Josette Anne Wallace (Warner & Wallace), on the briefs, for Defendant–Appellant.

Diane L. Ho, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Roger Lee Sussman (Roger) appeals from the Judgment Granting Divorce and Awarding Child Custody (Judgment) entered on April 18, 2005 in the Family Court of the Second Circuit.[1] We affirm the spousal support and the division and distribution of assets and debts parts of the Judgment. We vacate the child custody, visitation, and support part of the Judgment and remand for a new trial.

---

1. Judge Simone C. Polak presided.

## BACKGROUND

Roger was born in 1959. Plaintiff–Appellee Janice Lynn Sussman (Janice) was born in 1957. They were married on November 26, 1988. His highest grade completed is "16". Her highest grade completed is "15". Their first son (First Son) was born on March 28, 1989; second son on March 25, 1991; and third son on June 13, 1998.

On September 21, 2004, Janice filed a complaint for divorce. The trial concluded on February 8, 2005.

The Judgment (1) awarded joint legal custody of the minor sons to Janice and Roger; (2) awarded sole physical custody of the minor sons to Janice, subject to Roger's reasonable rights of visitation; (3) ordered Roger to pay child support of $556.67 per child per month; (4) ordered that Roger did not have to pay the $556.67 per month for First Son for the months of May, June, and July 2005, while First Son is away at Whitmore Academy; (5) ordered Roger to maintain health care insurance for the benefit of the minor sons; (6) ordered all uninsured health care costs incurred on behalf of the minor sons to be paid proportionate to the income percentages set forth in the Child Support Guidelines Worksheet; (7) awarded Janice the federal and state tax dependency exemption for the minor sons; (8) ordered Roger to pay for the educational expenses of the minor sons until they reached 18 years of age; (9) ordered Roger to reimburse Janice within thirty days the sum of $9,000 for the cost of First Son's education and transportation already accrued; (10) ordered Roger to pay for the balance of First Son's expenses at the Whitmore Academy through August 2005; (11) ordered Roger to pay spousal support of $1,550 per month for a period of seven years commencing May 1, 2005, and $1000 per month for a subsequent period of three years and, in doing so, expressly assumed that the housing, transportation, medical, and educational support needs of Janice and the minor sons are being satisfied; (12) ordered Roger to make arrangements for Janice and the minor sons to continue their residence at the dwelling owned by Roger's parents at 177 Kalipo Place, Haiku, Hawai'i, until the youngest son reaches age 18 or to pay an additional $1,800 per month to Janice towards the rental of a comparable residence for the family; (13) awarded the 2003 Honda Odyssey to Janice and the 2003 Honda Accord to Roger; (14) ordered Roger to pay for the insurance premiums, gas, and payments on both vehicles until the youngest son reaches age 18; and (15) ordered Roger to pay one-half of Janice's attorney fees and costs.

On May 11, 2005, Roger filed a notice of appeal. This case was assigned to this court on April 10, 2006.

## DISCUSSION

Divorce cases involve a maximum of four discrete parts: dissolution of the marriage; child custody, visitation, and support; spousal support; and division and distribution of property and debts. *Aoki v. Aoki*, 105 Hawai'i 403, 98 P.3d 274 (App.2004).

### A. Spousal Support and Division and Distribution of Property and Debts

Roger challenges the spousal support and the division and distribution of assets and debts parts of the Judgment. The Findings of Fact and Conclusions of Law (FsOF and CsOL) entered on June 24, 2005 state, in relevant part:

### FINDINGS OF FACT

. . . .

3. [Janice] is a homemaker with no means of support outside the home and [Roger] is self-employed with several areas of expertise including freelance writing, radio journalist and Life Counselor.

4. The parties have been supported financially for years by [Roger's] parents allowing them to tend to the business of raising their children, doing volunteer work in the community and pursuing endeavors of interest.

5. [Roger's] parents own the marital residence located at 177 Kalipo Place, Haiku, Maui. Since the purchase of the residence in 2000, the family has resid-

ed at the residence free of charge. Following the separation of the parties, [Janice] continued to reside at the residence with the children free of charge.

6. [Roger's] parents paid all expenses of the property including electric, water and all indicia of home ownership. (. . .) In addition, the parties received a monthly check in the amount of $2,700.00.

7. [Roger's] parents have also consistently paid for medical and educational costs, cars, car insurance and credit card debt.

8. Prior to 2000, [Roger's] parents supported the family in like manner as well as paying their rent and living expenses. Their monthly support check was for $3,400.00.

9. There were periods of time when the parties worked. [Roger's] parents subsidized family expenses during this period, as needed. There was no period of time in which the parties were self-sufficient financially.

. . . .

13. [Janice's] Exhibit "3" reflects family expenses of $6,585.00 at the time of separation. The expenses do not include rent, property insurance, property taxes or debt service. For purposes of calculating child support, a monthly gross income of $6,585.00 (consistent with the family's monthly expenses) is being imputed to [Roger]. . . .

. . . .

15. [Roger] has provided health care coverage for the benefit of the family through his parents.

16. [Roger] has provided educational costs for the three children through his parents.

. . . .

21. [Roger] has been diagnosed as bipolar and schizophrenic. His condition has been complicated by his self-medicating behavior with marijuana in particular.

22. Dr. Brian Jaeger, [Roger's] current treating psychiatrist, . . . testified

that [Roger] needs to remain on medication for his bipolar disorder.

. . . .

35. [Janice] testified that she currently attends Maui Community College in the hopes of obtaining a degree in Marriage and Family Therapy. It was estimated that she needed two years to complete her Bachelor's degree. Thereafter, she testified that she hoped to obtain her Master's degree. A Master's degree is necessary in her field in order to counsel clients and earn an adequate living.

36. [Janice] lacks marketable skills sufficient to adequately care for the family financially at the current time.

. . . .

38. At the time of the divorce the parties had no substantial marital assets.

Roger challenges: (1) FsOF nos. 3, 6, and 13; (2) the order requiring him to pay spousal support; (3) the order requiring him to pay for the balance of First Son's expenses at the Whitmore Academy through August 2005; (4) the order requiring him to make arrangements for Janice and the minor sons to stay at 177 Kalipo Place, Haiku, Hawai'i, until the youngest son turns age 18 or to pay an additional $1,800 per month so that Janice can find a place to rent; (5) the award of the 2003 Honda Odyssey to Janice and the order requiring him to pay for the insurance premiums, gas, and payments on it until the youngest son reaches age 18; and (6) the order requiring him to pay one-half of Janice's attorney fees and costs.

Roger's challenge is summarized in the following statement: "Finding of Fact No. 6 is especially egregious as there was never testimony by any party that Roger's parents provided a *regular monthly payment* to the family in a specific amount. The imputation of future income by the expectancy of future gifts was improper." (Emphasis in original.) However, Roger's challenge is contradicted by the following quote from his Amended Opening Brief:

Both parties agreed that [Roger's] parents had been providing most of the family's support during the course of the cou-

ples' joint or several unemployment, through various means. At one point Roger's parents paid off a $100,000.00 credit card debt. Janice testified that Rogers's [sic] parents had on more than one occasion paid off the couple's credit cards when the couple had run into financial trouble. "[A]t least once, maybe twice, where they just paid off a chunk of $20,000.00 or $10,000.00 or something and said don't do it again. And since that time, they paid off, I believe it was around $20,000.00 last year." Roger's testimony was essentially in agreement. Janice also testified, "I don't have housing expenses, because I'm living in Roger's parents [sic] home. They are paying insurance, they are paying the taxes, they're paying the utilities, they are paying for the car payments, they're paying the insurance." Janice also testified that they had received other payments from Roger's parents. "[F]rom what the bank records show, it was like $2700.00. There was a couple of times where it might have been $2500.00. And then there were times when it could have been up to $3200.00 or more. Because they would help us if we had a big dental bill or if we had a car that needed something to happen or if the house—...—the kids needed dental work they would cover those expenses as well." Roger's parents also "started paying for the cars and car insurance." Roger's parents also paid for the second son's school tuition. At the time of trial, Janice was driving a 2003 Honda Odyssey, for which Roger's parents were paying. Even after the couple's separation, Roger's parents were sending Janice money.

(Footnote and transcript citations omitted.)

The question of whether the family court may consider regular and consistent monetary gifts received by a spouse as part of that spouse's actual financial resources, condition and ability when determining spousal support is a unique question.[2] There is no dispute that during the marriage, Roger's parents provided Roger and his family with a residence, paid some of their expenses, and provided them with the funds to pay their remaining expenses. Nothing in the record suggests that Roger's parents will not continue this family support. As long as they continue to do so, there is a valid basis for the family court's order.

Hawaii Revised Statutes (HRS) § 580–47 (Supp.2005) states in part as follows:

**Support orders; division of property.** (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case....

In addition to any other relevant factors considered, the court, in ordering spousal support and maintenance, shall consider the following factors:

(1) Financial resources of the parties;

(2) Ability of the party seeking support and maintenance to meet his or her needs independently;

(3) Duration of the marriage;

---

2. The question of whether the trial court can consider gifts received by a parent as part of a parent's actual gross income when determining child support has been the subject of a debate across the country that is discussed in *Styka v. Styka*, 126 N.M. 515, 972 P.2d 16 (1998).

(4) Standard of living established during the marriage;

(5) Age of the parties;

(6) Physical and emotional condition of the parties;

(7) Usual occupation of the parties during the marriage;

(8) Vocational skills and employability of the party seeking support and maintenance;

(9) Needs of the parties;

(10) Custodial and child support responsibilities;

(11) Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance;

(12) Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made; and

(13) Probable duration of the need of the party seeking support and maintenance.

The court may order support and maintenance to a party for an indefinite period or until further order of the court; provided that in the event the court determines that support and maintenance shall be ordered for a specific duration wholly or partly based on competent evidence as to the amount of time which will be required for the party seeking support and maintenance to secure adequate training, education, skills, or other qualifications necessary to qualify for appropriate employment, whether intended to qualify the party for a new occupation, update or expand existing qualification, or otherwise enable or enhance the employability of the party, the court shall order support and maintenance for a period sufficient to allow completion of the training, education, skills, or other activity, and shall allow, in addition, sufficient time for the party to secure appropriate employment.

. . . .

(d) Upon the motion of either party supported by an affidavit setting forth in particular a material change in the physical or financial circumstances of either party, or upon a showing of other good cause, the moving party, in the discretion of the court, and upon adequate notice to the other party, may be granted a hearing. The fact that the moving party is in default or arrears in the performance of any act or payment of any sums theretofore ordered to be done or paid by the party shall not necessarily constitute a bar to the granting of the hearing. The court, upon such hearing, for good cause shown may amend or revise any order and shall consider all proper circumstances in determining the amount of the allowance, if any, which shall thereafter be ordered.

. . . .

(f) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

In light of HRS § 580-47, we conclude that the family court may and should consider regular and consistent monetary gifts received by a spouse as part of that spouse's actual financial resources, condition and ability when determining spousal support. Pursuant to HRS § 580-47(d), if and when Roger's parents materially reduce their regular and consistent monetary gifts to Roger, he may allege a material change in circumstance and ask the family court for a review of its orders.

## B.  Child Custody, Visitation, and Support

Roger challenges the child custody, visitation, and support part of the Judgment. Carol E. Wright (Wright) testified that she has a "MA in psychology", is "not a Ph.D. psychologist", and is a "[c]ertified substance abuse counselor".[3]  Roger contends that the court erred when, over Roger's objection, it decided that even if Wright was testifying about privileged communications with Roger, "there is [a] good cause statutory exception to allow it."

The court was referring to the statutory exception contained in Rule 504.1, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (Supp.2005) (HRE Rule 504.1). That rule states, in relevant part:

> **Psychologist-client privilege.** (a) Definitions.  As used in this rule:
>
> (1) A "client" is a person who consults or is examined or interviewed by a psychologist.
>
> (2) A "psychologist" is a person authorized, or reasonably believed by the client to be authorized, to engage in the diagnosis or treatment of a mental or emotional condition, including substance addiction or abuse.
>
> (3) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the client in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis or treatment of the client's mental or emotional condition under the direction of the psychologist, including members of the client's family.
>
> (b) General rule of privilege.  A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the client's mental or emotional condition, including substance addiction or abuse, among the client, the client's psychologist, and persons who are participating in the diagnosis or treatment under the direction of the psychologist, including members of the client's family.
>
> (c) Who may claim the privilege.  The privilege may be claimed by the client, the client's guardian or conservator, or the personal representative of a deceased client.  The person who was the psychologist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.
>
> (d) Exceptions.
>
> . . . .
>
> (3) Condition an element of claim or defense.  There is no privilege under this rule as to a communication relevant to the physical, mental, or emotional condition of the client in any proceeding in which the client relies upon the condition as an element of the client's claim or defense or, after the client's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense.

Where a client has made a confidential communication to a psychologist for the purpose of diagnosis or treatment of the client's mental or emotional condition, including substance addiction or abuse, does the client have a privilege to prevent the psychologist from testifying about the confidential communication?  Generally, the answer is yes. What if the client is the parent of a minor child and legal and physical child custody and visitation are the issues in dispute?  Across the country, the diversity of the applicable statutes and statutory history and the interpretation thereof has resulted in a diverse precedent.  This diverse precedent is discussed in *Laznovsky v. Laznovsky*, 357 Md. 586, 745 A.2d 1054 (Md.2000)[4].

---

3.  Carol E. Wright is not a "social worker", "licensed bachelor social worker", "licensed social worker", or "licensed clinical social worker" so Hawaii Revised Statutes Chapter 467E (Supp. 2005) (governing social workers) does not apply.

4.  In *Laznovsky v. Laznovsky*, 357 Md. 586, 745 A.2d 1054 (Md.2000), after discussing the diverse precedent across the country, the court cited *In re "B"; Appeal of Roth*, 482 Pa. 471, 484–86, 394 A.2d 419, 425–26 (Pa.1978):

There is no Hawaiʻi precedent. In this case, the family court followed the following Alabama precedent:

As to the mother's contention that the admission of the hospital records violated her psychiatrist-patient privilege pursuant to section 34–26–2, Code of Alabama 1975, we disagree. Section 34–26–2, Code 1975, does provide for confidential relations and communications between licensed psychologists or psychiatrists and their patients. We have held, however, that "where the issue of the mental state of a party to a custody suit is clearly in controversy, and a proper resolution of the custody issue requires disclosure of privileged medical records, the psychologist-patient privilege must yield." *Matter of Von Goyt*, 461 So.2d 821 (Ala.Civ.App.1984) (citations omitted).

In the instant case the father's counter-petition for custody modification clearly placed the issue of the mother's mental state in question. Thus, it became the court's duty to determine whether a proper resolution of the custody issue required disclosure of the mother's medical records. This the court clearly did by holding an in camera hearing, with all parties represented, to decide whether the asserted privi-

lege and confidentiality of the records should yield to the issue of Nicholas's best interests and well-being. After the hearing the court determined that the privilege would not prevent the admission of the hospital records into evidence.

*Harbin v. Harbin*, 495 So.2d 72 (Ala.Civ.App. 1986).

1.

*The HRE Rule § 504.1(d)(3) exception to the psychologist-client privilege is not applicable.*

■ Janice alleged that Roger's mental and/or emotional condition was so relevant to his request for custody of the children that it caused the HRE Rule § 504.1(d)(3) exception to be applicable. We conclude that the HRE Rule § 504.1(d)(3) exception requires more than relevance. In this context, "mental or emotional condition" means something that requires "diagnosis or treatment". The HRE Rule § 504.1(d)(3) exception requires Roger to rely upon his "mental or emotional condition" as an element of his claim or defense. A contrary interpretation would cause the exception to consume the rule. We agree with the majority in *Roper v. Roper*, 336 So.2d 654 (Fla.App.1976)[5]. Thus, we have

We conclude that in Pennsylvania, an individual's interest in preventing the disclosure of information revealed in the context of a psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is constitutionally based. This constitutional foundation emanates from the penumbras of the various guarantees of the Bill of Rights, *Griswold v. Connecticut, supra* [381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)], as well as from the guarantees of the Constitution of this Commonwealth....

The nature of the psychotherapeutic process is such that disclosure to the therapist of the patient's most intimate emotions, fears, and fantasies is required.... In laying bare one's entire self, however, the patient rightfully expects that such revelations will remain a matter of confidentiality exclusively between patient and therapist....

We recognize that our holding may, in some cases, make it more difficult for the court to obtain all the information it might desire regarding members of the juvenile's family, or about the juvenile's friends, neighbors, and as-

sociates. The individual's right of privacy, however, must prevail in this situation.

We do not directly address the constitutional right of privacy aspects of this case as it is not necessary.

*Laznovsky*, 357 Md. at 621, 745 A.2d at 1072 n. 16. The court then went on to hold that:

[W]hile the mental and physical health of a party is an issue to be considered by the trial court, a person seeking an award of child custody that claims to be a fit parent, does not, without more, waive the confidential psychiatrist/psychologist-patient privilege in respect to her or his past mental health 'diagnosis and treatment' communications and records.

*Id.* at 620–21, 745 A.2d at 1073.

5. In *Roper v. Roper*, 336 So.2d 654 (Fla.App. 1976), the majority decided as follows:

This court has previously considered the psychiatrist-patient privilege. *Yoho v. Lindsley*, 248 So.2d 187 (4th DCA Fla.1971). We will not repeat the discussion contained in that case but will apply the principles there announced to the specific facts of this case.

The threshold question is whether or not the wife, by seeking child custody in a suit for dissolution of marriage, introduced her mental

**444**

the HRE Rule 504.1 psychologist-client privilege and none of the listed exceptions are applicable.

■ In this case, although the family court was not talking about HRS Chapter 451 (Supp.2005), that statute is relevant because Wright testified that she is a "licensed marriage and family therapist[.]" HRS Chapter 451 (Supp.2005) states, in relevant part:

[§ 451J–1] Definitions. As used in this chapter, unless the context clearly requires a different meaning:

. . . .

"Marriage and family therapist" means a person who uses the title of marriage and family therapist, who has been issued a license under this chapter, and whose license is in effect and not revoked or suspended at the time in question.

. . . .

"Marriage and family therapy practice" means the application of psychotherapeutic and family systems theories and techniques in the delivery of services to individuals, couples, or families in order to diagnose and treat mental, emotional, and nervous disorders, whether these are behavioral, cognitive, or affective, within the context of the individual's relationships. Marriage and family therapy is offered directly to the general public or through organizations, either public or private, for a fee or through pro bono work. Marriage and family therapists assist individuals, couples, and families to achieve more adequate, satisfying, and productive social relationships, enable individuals to improve behavioral or psychological functioning, and help individuals reduce distress or disability. Marriage and family therapy includes but is not limited to:

(1) Assessment and diagnosis of presenting problems through inquiry, observation, evaluation, integration of diagnostic information from adjunctive resources, description, and interpretation of verbal and non-verbal communication, thought processes, beliefs, af-

---

condition as an element of her claim or defense so as to waive the privilege for any relevant communications. Fla.Stat. s 90.242(3)(b) (1975). There is no doubt, in a child custody dispute, that the mental and physical health of the parents is a factor that the court can and should consider in determining the best interests of the child. Fla.Stat. s 61.13(3)(g) (1975). *Green v. Green,* 254 So.2d 860 (1st DCA Fla. 1971). However, we do not believe that simply by seeking custody of her children, wife has made her mental condition 'an element of her claim or defense' thereby waiving her psychiatrist-patient privilege.

The wife's mental condition may become an issue in the case; and if so, relevant evidence concerning her mental condition may be presented at trial. Prior to trial, the husband has the benefit of Rule 1.360 R.C.P. Upon a proper motion and showing of good cause, the trial court can require the wife to submit to a compulsory pre-trial mental examination. *Gordon v. Davis,* 267 So.2d 874 (3rd DCA Fla.1972). The dissent decided as follows:

However, it seems to me that when the appellant filed her counter petition alleging that she was a fit and proper person to have the custody of the two minor children of the parties and praying for custody, Section 61.13(3), Florida Statutes (1975), became applicable to this case. That statute mandates that in deciding custody the court shall determine the best interests of the children by evaluating all relevant factors, 'expressly including the mental and physical health of the parents.' Section 90.242, Florida Statutes (1975), which creates the psychiatrist-patient privilege involved herein expressly excludes the privilege from applying to any relevant communications in a civil proceeding in which the patient introduces his mental condition as an element of his or her claim or defense.

As the majority points out, a required psychiatric examination is available to the court pursuant to Fla.R.Civ.P. 1.360. This rule is frequently used when a party's mental condition comes into issue in custody matters. But can there be any real question that a prelitigation analysis and evaluation of a party by his psychiatrist will be much more informative and helpful to the court in determining the primary question in the litigation, viz., the best interests of the children? Thus, I believe the statute creating the privilege envisions that it could not be invoked in a case involving child custody.

The order appealed from does not purport to give the appellee unbridled license to explore appellant's entire psychiatric history; rather it rightly limits the inquiry to communications, diagnosis, and treatment insofar as appellant's mental and emotional state relates to her fitness as a mother.

Accordingly, feeling as I do that the trial court's order authorizing the taking of the deposition of appellant's psychiatrist under the facts of this case was correct, I would affirm that order.

*Roper,* 336 So.2d at 656–57.

fect, boundaries, roles, life cycle stages, family interaction patterns, economic, social, emotional, and mental functioning, in order to identify specific dysfunctions and to identify the presence of disorders as identified in the Diagnostic and Statistical Manual of Mental Disorders;

(2) Designing and developing treatment plans by incorporating and integrating recognized family system theories, communication principles, crisis counseling principles, cognitive and behavioral counseling principles, or psychotherapeutic techniques in establishing short-and long-term goals and interventions collaboratively with the client; and

(3) Implementing and evaluating the course of treatment by incorporating family systems theories to assist individuals, couples, and families to achieve more adequate, satisfying, and productive social relationships, to enable individuals to improve behavioral or psychological functioning, and to help individuals reduce distress or disability by improving problem solving skills, decision making skills, communication and other relationship interaction patterns, identification of strengths and weaknesses, understanding or resolution of interpersonal or intrapersonal issues, recognition, development, and expression of appropriate affect, and referral to adjunctive medical, psychological, psychiatric, educational, legal, or social resources.

. . . .

[§ 451J–12] **Confidentiality and privileged communications.** No person licensed as a marriage and family therapist, nor any of the person's employees or associates, shall be required to disclose any information that the person may have acquired in rendering marriage and family therapy services except in the following circumstances:

. . . .

(5) In accordance with the terms of a client's previously written waiver of the privilege; or

(6) Where more than one person in a family jointly receives therapy and each family member who is legally competent executes a written waiver; in that instance, a therapist may disclose information received from any family member in accordance with the terms of the person's waiver.

[§ 451J–13] **Therapist prohibited from testifying in alimony and divorce actions.** If both parties to a marriage have obtained marriage and family therapy by a licensed marriage and family therapist, the therapist shall be prohibited from testifying in an alimony or divorce action concerning information acquired in the course of therapy. This section shall not apply to custody actions whether or not part of a divorce proceeding.

2.

*The HRS § 451J–13 prohibition
is not applicable.*

The HRS § 451J–13 prohibition applies in situations where "both parties to a marriage have obtained marriage and family therapy by a licensed marriage and family therapist[.]" It appears that both Roger and Janice obtained marriage and family therapy from Wright. In his Amended Opening Brief, Roger states that "[t]he trial court . . . ordered a counselor who had previously treated Roger and [Janice] ( . . . ) to testify as to information acquired during counseling sessions with Roger." This statement is supported by Wright's testimony:

Q ( . . . ) Ms. Wright, have you had the opportunity to work with the Sussman family?

A With the family, yes.

Q And have you worked with all members of the family?

A The children and the grandparents and the couple.

Q And just briefly tell us, without what went on in these sessions, what kind of groupings those would have been? . . . .

A Well, sometimes it would be couples counseling, sometimes it would be counseling with the children and mom and dad. That happened a few times. And, also, there was individual counseling for the children off and on.

. . . .

Q Do you work with the family drug court?

A Yes, I do.

Q And you are contracted by the State to do that?

A Yeah. I am contacted by Maui Youth and Family Services which contracts with the State. And I am in the RFP to be one of the assessors for families.

Q And what does that mean, what do you do?

A What I do is I see the client, identified patient or client, as well as the family members, to see how they can get their life on track. It's about addressing the drug problem on Maui, ice epidemic and marijuana.

Wright's testimony pertained solely to the custody part of the divorce case. The HRS § 451J–13 prohibition does not apply to custody actions. Therefore, the HRS Chapter 451J–13 "licensed marriage and family therapist" prohibition does not apply to Wright's testimony. In other words, the legislature has expressly stated that a licensed "marriage and family therapist" is not prohibited from testifying in a custody action concerning information acquired in the course of therapy to both parties.

## 3.

### *The HRS subsections 451J–12(5) and (6) permissions to disclose are not applicable.*

HRS § 451J–12(5) is not applicable because there is no evidence that Roger previously executed a written waiver of the privilege. HRS § 451J–12(6) is not applicable because the "each family member who is legally competent executes a written waiver" requirement was not satisfied.

## 4.

### *The HRS § 451J–12 right to refuse to disclose is applicable.*

Subsections (1) through (5) of HRS § 451J–12 state five exceptions to the rule that "[n]o person licensed as a marriage and family therapist, nor any of the person's employees or associates, shall be required to disclose any information that the person may have acquired in rendering marriage and family therapy services[.]" As none of the five exceptions applies in this case, the court was not authorized to order Wright to disclose the information.

The record is clear that Wright would not have disclosed the information absent the court order. Wright testified that "[m]y role has actually been as a therapist. And if I am subpoenaed, the judge has to order me to give out any information. Otherwise, it's confidential and I cannot."

## CONCLUSION

Accordingly, we affirm the spousal support and the division and distribution of assets and debts parts of Judgment Granting Divorce and Awarding Child Custody entered on April 18, 2005. We vacate the child custody, visitation, and support part of the Judgment and remand for a new trial.

