**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000585
27-MAR-2026
10:20 AM
Dkt. 155 MO**

NO. CAAP-23-0000585

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

A.P., Plaintiff-Appellant, v.
S.B., Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CASE NO. 3DV20100038K)

### MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

This is an appeal from a divorce proceeding. A.P.
(**Wife**) appeals from the ***Amended Decree*** *Granting Absolute Divorce and Awarding Child Custody* entered by the Family Court of the Third Circuit.[1] She contests (1) temporary spousal support awarded to S.B. (**Husband**), (2) temporary and permanent child support, and (3) the final property division. We affirm.

### BACKGROUND

Wife and Husband married in 2005. Wife filed for divorce on February 25, 2020. After much litigation, a divorce decree was entered on May 25, 2023. After more litigation, the Amended Decree was entered on October 5, 2023. Wife appealed. The family court entered findings of fact (**FOF**) and conclusions of law (**COL**) on December 15, 2023, consistent with Hawaiʻi Family Court Rules (**HFCR**) Rule 52.

---

[1] The Honorable Jill M. Hasegawa presided.

## POINTS OF ERROR

Wife contends the Family Court erred by: **(A)** basing Husband's temporary spousal support award on non-existing trust distributions and trust assets she did not own; **(B)** basing child support on non-existing trust distributions; **(C)** excluding Category 1 credits; **(D)** excluding Category 3 credits; and **(E)** not identifying valid and relevant considerations (**VARCs**) to deviate from the marital Partnership Model Division.

## STANDARDS OF REVIEW

The "family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." Hamilton v. Hamilton, 138 Hawaiʻi 185, 197, 378 P.3d 901, 913 (2016). The family court abuses its discretion if it disregards rules or principles of law or practice to the substantial detriment of a party litigant; it fails to exercise its equitable discretion; or its decision clearly exceeds the bounds of reason. Id.

We review the family court's findings of fact under the *clearly erroneous* standard. Hamilton, 138 Hawaiʻi at 197, 378 P.3d at 913. A finding of fact supported by substantial evidence in the record is not clearly erroneous. Id. *Substantial evidence* is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Id.

We review the family court's conclusions of law *de novo*, under the *right/wrong* standard. Hamilton, 138 Hawaiʻi at 197, 378 P.3d at 913. However, when a conclusion presents mixed questions of fact and law, we review it under the *clearly erroneous* standard because the conclusion depends on the facts and circumstances of the case. Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007). A conclusion of law supported by the findings of fact and applying the correct rule of law will not be overturned. Id.

2

## DISCUSSION

### A. The Family Court acted within its discretion by calculating and awarding temporary spousal support to Husband.

Wife and Husband stipulated to pre-decree relief. Husband moved for relief from the stipulation. The Family Court entered FOFs, COLs, and an order granting Husband's motion in part.[2] Wife challenges Husband's temporary spousal support award. She argues **(1)** the Family Court erred by considering the Mellon Bank Trust and Craig Trust assets and former distributions as her financial resources, and **(2)** the amount awarded did not reflect Husband's demonstrated need.

### 1. The Family Court did not include the value of either trust's assets, and did not err by including former trust distributions, as part of Wife's financial resources.

Temporary spousal support is authorized under Hawaii Revised Statues (**HRS**) § 580-9 (2018):

> After the filing of a complaint for divorce or separation the court may make such orders relative to the personal liberty and support of either spouse pending the complaint as the court may deem *fair and reasonable* and may enforce the orders by summary process.

(Emphasis added.)

The Family Court found, and Wife does not contest, that Wife is the beneficiary of the **Mellon Bank Trust** Fund and the Earl M. **Craig Trust**; Wife received annual distributions from the Mellon Bank Trust for at least three years; Wife's 2019 distribution was $8,894.97; Wife received $12,500 per month from the Craig Trust from November 2018 to February 2020 (the month Wife filed for divorce); in the past, the Craig Trust reimbursed Wife for large costs, such as the children's school tuition, and Wife presented no evidence that any of her requests for money

---

[2] The Honorable Mahilani E.K. Hiatt presided.

from the Craig Trust were denied; and on April 1, 2020, the Craig Trust's corporate trustee informed Wife her monthly distributions had ceased as of March 26, 2020.

Wife challenges FOF nos. 22, 30, 37, and 40:

> 22. As of February 25, 2020, [Wife] had a Morgan Stanley account with a balance of $257,420. This balance fluctuated from $117,265.67, as of May 8, 2020, to $180,724 as of September 2, 2020. [Wife] failed to provide any credible evidence to explain why the balance decreased by $140,154.33 between February 13, 2020 and May 8, 2020, and how the funds were used, or, why the balance increased by $63,458.33 between May 8, 2020 and July 10, 2020, and from where those funds originated.
>
> . . . .
>
> 30. [Wife] testified that she spent all of the $175,000 [total monthly distributions from the Craig Trust] on such things as family trips to New Zealand, to Canada, and to a neighbor island, improvements to the Marital Residence, attorney's fees, tuition for the Children, equestrian equipment and various "discretionary" expenses. The court finds that this testimony by [Wife] lacked credibility and the court finds that [Wife] failed to adequately explain how she spent the $175,000, or that she spent the entire amount.
>
> . . . .
>
> 37. [Wife] testified that she had nothing to do with the commencement or the cessation of the Monthly Distribution. The court finds [Wife]'s testimony that, she simply discovered the $12,500 one day while balancing her checking account and that she had no idea why the Monthly Distribution suddenly stopped the same month that she filed the Complaint, to be completely lacking in credibility.
>
> . . . .
>
> 40. The court finds that on or about March 6, 2020, [Wife] created a trust and that assets were transferred into that trust (**"March 2020 Trust"**). [Wife] denied transferring any assets into the March 2020 Trust but [Wife] also failed to produce the entire March 2020 Trust document. The court finds that, on this record, [Wife]'s testimony that she did not fund the March 2020 Trust is not credible. The court notes that [Wife]'s Stanley Morgan [sic] account dropped by $140,154.33 between February 13, 2020 and May 8, 2020 without any explanation as to how those funds were used.

"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).

4

The Family Court found, and Wife does not contest, that Wife reported a monthly income of $13,028 when she filed for divorce, which she calculated by adding her monthly Craig Trust distribution with $528 from her self-employment as a riding instructor; Wife failed to include her annual Mellon Trust distribution averaging $741.25 per month; Wife's total monthly income when she filed for divorce was $13,769.25; Husband reported his total monthly income as of March 13, 2020, to be $3,234; Wife's and Husband's joint income up to their separation was ($13,769.25 + $3,234) $17,003.25; their monthly expenses were $8,600 as of February 25, 2020, and the monthly marital-property savings was ($17,003.25 - $8,600) $8,403.25.

Wife challenges FOF nos. 38 and 39:

> 38.    [Wife] reported that her current monthly income is $1,574.92, which is the sum of (a) her monthly income of $1,020.92 from her riding school instruction; and (b) $554.00, which she claims is the average she received over three years from the Mellon Trust.

> 39.    The court finds that the correct amount to use for the Mellon Trust funds is $741.25 (the December 2019 Distribution of $8,894.97 divided by 12 months), and not $554 (which is the average over three years).  Thus, the court finds that based on the credible evidence presented, [Wife]'s monthly income is $1,762.17.

Those findings were supported by substantial evidence and were not clearly erroneous.

The Family Court found, and Wife does not contest, that Husband's current monthly income was $2,679.41 and his monthly expenses were $3,150.

Wife challenges the following FOFs:

> 25.    [Wife]'s income statements listed the value of the Craig's [sic] Trust as "unknown" but the evidence admitted during the Hearing reflects a total value of $30,000,000.

> . . . .

> 28.    The record reflects distributions from the Craig Trust to [Wife] in 2016, 2017 and 2018 for the Children's tuition, swimming lessons and "discretionary."

> . . . .

5

48.     The court finds that there has already been extensive litigation between the Parties and that [Husband] expended significant resources in attempts to obtain relevant discovery related to [Wife]'s assets and resources and the discovery was reasonably calculated to lead to the discovery of admissible evidence.  The court finds that [Wife] unreasonably hampered [Husband]'s discovery requests which in turn increased the cost of litigation.

. . . .

50.     The court finds that [Husband] has a monthly need of $470.59 to cover his monthly expenses ($3,150 - 2,679.41 = $470.59).

51.     The court finds that it is fair and reasonable to divide $8,403.25 in two to establish the amount that [Husband] would need to maintain his standard of living for the purposes of temporary spousal support, i.e. $8,403.25/2 = $4,201.63.

52.     The court finds that [Husband] has a need of $4,201.63 a month to maintain the standard of living established during his marriage to [Wife].

53.     The court finds that [Wife] owes [Husband] monthly temporary spousal support in the amount of $4,672.22 ($4,201.63 + $470.59) to meet his monthly expenses and maintain the standard of living established during the marriage.

. . . .

55.     The court finds that despite [Wife]'s claimed monthly income of $1,574.92, she and the Children are able to maintain a lifestyle with monthly expenses of $10,165.80, and an increase in [Wife]'s Stanley Morgan [sic] account of $63,856.83.

56.     [Wife] testified that she has borrowed money from her mother during this divorce proceeding.

. . . .

58.     Pursuant to the Asset and Debt Statements filed by the Parties, and not including the Craig Trust or the Marital Residence, [Wife] reported assets of $1,011,276 (as of September 2, 2020) and [Husband] reported assets of $134,385.64 (as of September 15, 2020).

59.     The court finds that even without considering the Craig Trust and the Marital Residence, [Wife] has substantial assets and resources in comparison to [Husband].

60.     The court finds that [Wife] has significant financial resources which are sufficient to cover the expenses and support for both [Wife] and [Husband] pending the final divorce decree.

61.     The court finds that [Wife] has conceded that she is able to pay any award of attorney fees and temporary spousal support.  See [Wife]'s Closing Argument at p. 10 ("If the court is inclined to award [Husband] any fees, or

spousal support, [Wife] will use her marital separate property to pay those costs, but would ask that all sums so advanced come form [sic] [Husband]'s proceeds from the sale of the marital residence.").

Those findings were supported by substantial evidence and were not clearly erroneous.

Wife challenges COL nos. 70 and 72:

> 70.   The temporary spousal support award must be a sum that is necessary for the maintenance of [Husband] pending litigation and still "fair and reasonable" in light of [Wife]'s income, resources, assets and ability to borrow money.
>
> . . . .
>
> 72.   The standard of living during marriage is generally defined as the couple's income during the marriage minus their expenses. See. e.g., *Spousal Support and the Marital Standard of Living in Hawaiʻi Divorces*, 18-SEP Haw. B.J. 4 at 6 (2014).  Accordingly, as set forth above, the standard of living established during the marriage in this case is $8,403.25.

Wife contends the Family Court erred by including **(a)** the assets of the Mellon Bank Trust and the Craig Trust, and **(b)** her former monthly Craig Trust distributions, in her financial resources.

**(a)**   Wife argues, correctly, that the Mellon Bank Trust and Craig Trust trustees have title to their respective trust's corpus.  "A *trust* may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another."  Amy Morris Hess, George Gleason Bogert & George Taylor Bogert, <u>Bogert's The Law of Trusts and Trustees</u> § 1 (2025).  "Under Hawaiʻi law, a trustee holds legal title to property for the equitable benefit of the trust's beneficiaries, thereby dividing legal and equitable interest in the trust property."  <u>Coon v. City & County of Honolulu</u>, 98 Hawaiʻi 233, 260, 47 P.3d 348, 375 (2002).

The record does not show that the Family Court imputed the value of the principal of either trust to Wife.  FOF nos. 25 and 31 valued the Craig Trust and Mellon Bank Trust assets at $30 million and $818,454, respectively, but the court made no

7

finding that Wife had access to either trust's corpus. Rather, the $30 million Craig Trust value compared to the $12,500 monthly distribution amount showed it unlikely the distributions were terminated because they were materially eroding trust corpus. FOF nos. 59 and 60 stated that Wife had "significant financial resources which are sufficient to cover the expenses and support for both [Wife] and [Husband] pending the final divorce decree" "*without considering* the Craig Trust" (emphasis added). Nor does the record show that the Family Court imputed the value of the Mellon Bank Trust assets as part of Wife's financial resources.[3]

**(b)** Wife contends the Family Court erred by speculating about future trust disbursements. Citing Sussman v. Sussman, 112 Hawaiʻi 437, 146 P.3d 597 (App. 2006), she argues "that for gifts or trust distributions to even be considered for purposes of spousal support, the distributions or gifts must be regular and consistent, and that reduction in such gifts or distributions must be taken into account." (Emphasis omitted.)

Sussman concerned *permanent* spousal support and maintenance under HRS § 580-47 (Supp. 2005), while this case involves *temporary* spousal support under HRS § 580-9. The former required the family court to consider thirteen specific factors "[i]n addition to any other relevant factors[.]" The latter allows the family court to order temporary support "as the court may deem fair and reasonable[.]" The family court has broader discretion to award temporary support than when awarding permanent support and maintenance.

In Sussman, husband's parents paid the parties' expenses, including credit card debt, insurance, and taxes, in addition to a monthly allowance from $2,500 "up to $3200 [sic] or more." 112 Hawaiʻi at 440, 146 P.3d at 600. The court considered "whether the family court may consider regular and

---

[3]      FOF no. 58 *described* Wife's asset and debt statement, it did not *ascribe* additional assets or value to her. Further, the Family Court concluded Wife "does not have direct access to the [trusts'] funds and any disbursements are at the discretion of the Trustees[,]" evincing the Family Court's decision not to impute the corpus of either trust to Wife.

8

consistent monetary gifts received by a spouse as part of that spouse's actual financial resources, condition and ability when determining spousal support[.]"  Id.  The court held that under HRS § 580-47 "the family court may and should consider *regular and consistent monetary gifts* received by a spouse as part of that spouse's actual financial resources, condition and ability when determining spousal support."  Id. at 441, 146 P.3d at 601 (emphasis added).

Here, Wife's receipt of $12,500 every month from November 2018 through February 2020 may be considered regular and consistent.  The Family Court found Wife's testimony "that she had no idea why the Monthly Distribution suddenly stopped the same month that she filed the Complaint, to be completely lacking in credibility."  The court also found that Wife failed to show how she spent the monthly distributions, or that she had spent the entire $175,000.  That, combined with Wife having "unreasonably hampered" Husband's discovery about the trusts, could be seen as attempts to minimize or hide her assets.  Cf. Schiller v. Schiller, 120 Hawaiʻi 283, 305-06, 205 P.3d 548, 570-71 (App. 2009) (husband filed for bankruptcy one week before divorce trial "to gain an advantage in the divorce").

On this record, we cannot conclude that the Family Court abused its discretion by including Wife's former Craig Trust monthly distributions as part of her financial resources.

> **2.  The Family Court acted within its discretion by calculating and awarding temporary spousal support to Husband.**

"An award for temporary support is a sum necessary for the maintenance of a party pending litigation."  Hamilton, 138 Hawaiʻi at 208, 378 P.3d at 924.  Temporary support is "for the maintenance of [a spouse's] accustomed standard of living[.]"  Farias v. Farias, 58 Haw. 227, 232, 566 P.2d 1104, 1108 (1977).

Wife argues the Family Court erred by using fifty percent of the parties' monthly savings during marriage as the basis of the award rather than Husband's demonstrated needs.  She quotes Gordon v. Gordon, 135 Hawaiʻi 340, 356, 350 P.3d 1008,

1024 (2015) (holding that a spouse "is not entitled to more spousal support than is required to satisfy [their] demonstrated needs").

Gordon involved permanent support and maintenance under HRS § 580-47, not temporary support under HRS § 580-9. Other cases she cites — Jacoby v. Jacoby, 150 Hawaiʻi 158, 498 P.3d 689 (2021); Cassiday v. Cassiday, 6 Haw. App. 207, 716 P.2d 1145 (1985), aff'd in part, rev'd in part, 68 Haw. 383, 716 P.2d 1133 (1986); and JZ v. JZ, No. CAAP-19-0000496, 2020 WL 2575458 (Haw. App. May 21, 2020) (mem. op.) — also involved permanent support and maintenance.

Temporary support is "for the maintenance of [a spouse's] *accustomed standard of living* and for the efficient prosecution of [their] libel . . . ." Farias, 58 Haw. at 232, 566 P.2d at 1108 (emphasis added). The Family Court determined the parties' accustomed standard of living by subtracting reported monthly expenses from reported income, and dividing the balance by two. We cannot conclude that the Family Court abused its discretion in so doing.

> **B.    The Family Court acted within its discretion when it calculated and awarded child support in the Amended Decree.**

Wife contends the Family Court erred by awarding child support "based on imputing [to] Wife non-existing trust distributions."

The parties' pre-decree stipulation reserved the issue of child support. Husband's motion for relief requested an order requiring that Wife pay child support. The Family Court used the Child Support **Guidelines** and Extensive Time-Sharing worksheets, and attributed gross monthly income of $1,762.17 to Wife and $2,679.41 to Husband. The court ordered Husband to "pay monthly child support" and "back child support" to Wife.[4]

Wife moved for reconsideration under HFCR Rules 59 and 60. The Family Court, on its own, corrected itself because

---

[4]    Judge Hiatt presided.

it "failed to include the spousal support ordered by the court to be paid to [Husband] as income when the court calculated child support[.]" Using Wife's gross monthly income "of $1,762.11 [sic]," Husband's $2,679.41 gross monthly income "augmented by the monthly spousal support of $4,672.22, for a total monthly income of $7,351.63[,]" and the November 1, 2020 updated Guidelines, the court ordered Husband to pay increased monthly child support to Wife. The court denied relief under HFCR Rule 59, and continued the proceeding under HFCR Rule 60.[5]

On the first day of trial, the Family Court addressed the outstanding HFCR Rule 60 issues:

> [T]he Court is going to issue orders regarding alimony and child support because child support is affected by the issue of alimony. For purposes of the Court's decision the, Court did find that wife's income for the period March 2022 to July 2022 was $9,097.03 and husband's income was 7351.63. The Court came by that decision noting that wife received and it was imputed to her the 12,500 from the trust, the 741.25 from the other trust, and the $528 from the riding lessons, reduced by the alimony payment of 4672.22 which is how the Court came up with the 9,097.03.
>
> For husband's income, it was his income as stated on his income and expense, the 2,679.41, plus the alimony he received, the 4672.22, which led to the 7351.63.
>
> For the period from July to December 2021, Court finds wife's income to be 9589.35. The Court arrived at that decision, again the 12,500 income, the 741.25 from the trust, and she filed updated financials listing her riding income at $1,020.92 minus -- reduced by the alimony that she paid, 4672.22. Husband's income, again the 2,679.41, plus the alimony he was receiving of 4672.22. So those are how the Court came up with that income for the period.
>
> And then finally, the parties' incomes for the period January 2022 to current, wife's income 14262.17. Court came up with that using wife's income from the trust, 12,500, the 741.25 from the second trust, and the 1,020.92 from the riding expense -- riding income. And husband's income of $6,694 which I understand he started his new job at the Hilton or the timeshare and that is the amount listed. So that's the income that the Court used.
>
> . . . .
>
> All right. As to child support, the Court found that for the period March 2nd, 2020, to June 8, 2020, wife would owe -- because in the calculations, Judge Hiatt did not impute the income to wife. She only imputed the alimony paid to husband, not imputing the full income to wife from the trust. So the Court did find that wife would owe

---

[5]     Judge Hiatt presided.

husband $323 per month for the period March 2nd, 2020, to June 8, 2020.

For the period June 9, 2020, to June 30, 2020, Court found that husband would owe wife $1,494 per month to be prorated.

And then from the period July 1st, 2020, to December 31st, 2021, the Court found that father would owe mother $1,480 per month in child support.

And then finally, from January 1st, 2022, to current, Court found that husband would owe wife $928 -- sorry -- $926 per month in child support.

We held above that the Family Court acted within its discretion by including Wife's former trust distributions as part of her financial resources. The court previously included Husband's temporary support payments in his income when calculating child support, but did not include Wife's trust payments — which were included when calculating temporary support — in her income when calculating child support. The Family Court acted within its discretion by correcting the oversight.

Wife relies on <u>CH v. Child Support Enforcement Agency</u>, 149 Hawaiʻi 523, 495 P.3d 373 (App. 2021), to argue that the Family Court erred by imputing income to Wife contrary to the Guidelines. <u>CH</u> involved the 2014 Guidelines. <u>Id</u>. at 532 n.5, 495 P.3d at 382 n.5. The 2020 Guidelines apply here. In <u>CH</u> we noted that both versions "provide that income may be imputed only when a parent is not employed full-time or is employed below full earning capacity." <u>Id.</u> at 537 n.7, 495 P.3d at 387 n.7. The 2020 Guidelines contain "an expanded list of special circumstances (factors)" for imputing income. <u>Id.</u>

The 2020 Guidelines provide:

**IMPUTED INCOME** may be used when a parent is ***not employed full-time*** or is employed below full earning capacity. Incarceration shall not be considered voluntary unemployment in establishing or modifying an order of support. Whether incarcerated or not, if a parent's income is imputed, the parent's ***specific circumstances*** must be considered, including but not limited to:

a. The parent's ***assets***;
b. The parent's residence;
c. The parent's employment and ***earnings history***;
d. The parent's reasonable ***work aspirations***;
e. The parent's job skills;
f. The parent's ***education***;
g. The parent's literacy;

```
h.    The parent's age;
i.    The parent's health;
j.    The parent's criminal record and other
      employment barriers;
k.    The parent's record of seeking work;
l.    The local job market;
m.    The availability of employers willing to hire
      the parent;
n.    The prevailing earnings level in the local
      community; and
o.    The reasonable needs of the children.

If a parent's income is limited in order to care for
children to whom the parents owe a joint legal
responsibility, and at least one of the children is 3 years
of age or younger, then no additional income will be imputed
to that parent.  If all of the subject children are over 3
years of age, and the parent who receives support is
mentally and physically able to work, and remains at home
and does not work, then thirty (30) hours (or less) of
weekly earnings at the minimum wage may be imputed to that
parent.
```

Hawaiʻi Child Support Guidelines 2020, at 20 (emphasis added)
(footnotes omitted).[6]

Here, the Family Court found, and Wife does not dispute, that: Wife has a college degree; she is self-employed as a horse-back riding instructor; "the Parties relied on [Wife]'s financial resources to cover the Parties' monthly expenses shortfall" during the marriage; Wife is a beneficiary of two trusts; she "self reported her monthly income, as reflected in her Income & Expense Statement filed herein on February 25, 2020 as $13,028.00, which [included] her monthly Craig Trust distribution of $12,500.00 with $528 in average income from [her] self-employment as a riding instructor"; she consistently listed "her monthly expenses at around $13,000.00/month"; "at no time during the three year pendency of the divorce, has [she] attempted to increase her income potential to meet her expenses"; she "did not seek further employment opportunities to supplement her income, even though her expenses were much higher than her income"; rather, she "[chose] to deplete her assets, and take a loan from her father . . . which she listed at $75,000.00, to meet her expenses during the pendency of the divorce" but "had

_____

[6]    https://ag.hawaii.gov/ocsh/files/2021/03/Child-Support-Guidelines-2020.pdf [https://perma.cc/3HST-6S7Z]

not made any payments on the alleged 'loan' from her father, nor did she have any plans on how she was going to pay it back."

The Family Court

> did not find [Wife]'s testimony regarding her financial affairs, including her ability to receive income and trust distributions, credible. Rather, based on [Wife]'s actions and her apparent disregard for any concerns about covering her monthly expenses in the future, the Court believes that once the divorce is final, [Wife] will be able to access her trust distributions, which historically have been $12,500.00/month from the Craig Trust and an average of $741.25/month from the Mellon Trust.

The record shows the Family Court considered Wife's specific circumstances under the 2020 Guidelines.

Wife argues the Family Court erred when it "refused to use the actual amount [the Craig Trust] distributed to Wife once the distributions resumed in June 2023 at $5,000 per month." The May 25, 2023 divorce decree awarded child support based on equal timesharing. Wife moved for reconsideration on June 5, 2023. She argued that actual timesharing was 4/3, with her having primary custody, and that her Craig Trust distributions had not resumed. The motion stated:

> A motion for post-decree relief to modify child support cannot fairly resolve this issue, as a ruling on such a motion cannot be applied retroactively back behind the filing date of the motion. Therefore, a [HFCR] Rule 59(e) motion is the proper vehicle to address the correct calculation of child support retroactive to January 1, 2023.

Wife filed a declaration on August 9, 2023. She stated that "on June 23, 2023 I received a $5,000 disbursement [from the Craig Trust] wired to my Morgan Stanley account. When I inquired they informed me I would continue to receive $5,000 per month through February of 2024."

An order granting the motion for reconsideration in part and denying it in part was entered on August 25, 2023. The Family Court denied reconsideration of "the income imputed to [Wife] for purposes of child support calculations. Based on the testimony of the parties and the records and files herein, the Court finds that [Wife]'s imputed income is properly calculated at $14,262/month." The court did not abuse its discretion by

declining to retroactively modify the divorce decree based on facts not in the trial record.[7] Wife's remedy based on trust distributions in a reduced amount having resumed a month after entry of the divorce decree would have been a motion for post-decree relief, something specifically not requested by her motion for reconsideration.

>              **C.    Wife was not entitled to a Category 1 credit
>                     for Premarital Separate Property that became
>                     Marital Separate Property.**

Wife contends she was entitled to a Category 1 credit for two accounts she owned on the date of marriage (**DOM**): a Roth IRA and a brokerage account. The accounts were Premarital Separate Property. See Hamilton, 138 Hawaiʻi at 200, 378 P.3d at 916. On the DOM, they became either Marital Separate Property or Marital Partnership Property. Id. at 201, 378 P.3d at 917. Category 1 credits apply only to Premarital Separate Property that became Marital Partnership Property. "Each partner's individual *contributions to the marriage*, i.e., the values of Category 1 and Category 3, are to be repaid to the contributing spouse absent equitable considerations justifying a deviation." Id. (emphasis added).

The Family Court stated:

> 75)   At trial, [Wife] testified that as of the date of marriage, she had a Waterhouse ROTH IRA valued at $10,251.82 and a Waterhouse Brokerage account valued at $218,739.93. However, [Wife] also testified that these funds were transferred into her Morgan Stanley accounts and used post-separation, during the pendency of the divorce, on attorneys' fees, alimony and living expenses. As such, the Court did not give [Wife] credit for these assets in the Property Division Chart.

Wife points to no evidence in the record showing that either account became Marital Partnership Property. The Family Court's determination that they were Wife's Marital Separate

---

    [7]    The Family Court granted reconsideration of child support based on 4/3 timesharing, because "it is clear that notwithstanding the Court's order, the actual timesharing for the children differed from the Court's order." That was reflected in the Amended Decree.

Property was not clearly erroneous. Marital Separate Property is "a narrow category of separate property" that has been excluded from the marital partnership and is not subject to division. Hamilton, 138 Hawaiʻi at 202, 378 P.3d at 918. Wife was not entitled to a Category 1 credit for the value of the Roth IRA or the brokerage account.

**D.    Wife was not entitled to a Category 3 credit for Marital Separate Property that did not become Marital Partnership Property.**

Wife contends she was entitled to a Category 3 credit for gifts and a life insurance payment she received during the marriage. Those funds were Marital Separate Property. See Hamilton, 138 Hawaiʻi at 200, 378 P.3d at 916.

The Family Court stated:

> 76)    [Wife] also testified during trial that during the marriage, she received several gifts and inheritances from family members. Specifically, [Wife] testified that she received a Nassau Life Insurance Payout valued at $125,939.44, an Unclaimed Property — UGMA gift of $17,810.68 and $25,000.00 gift from [Wife]'s grandmother. However, [Wife] also testified that she deposited these funds into her Morgan Stanley investment account and used [them] post-separation, during the pendency of the divorce, on attorneys' fees, alimony and living expenses. As such, the Court did not give [Wife] credit for these assets in the Property Division Chart.

Wife points to no evidence in the record showing that the insurance payout or gifts became Marital Partnership Property. See Hamilton, 138 Hawaiʻi at 202, 378 P.3d at 918 (describing when a gift or inheritance received during marriage can become Marital Partnership Property). The Family Court's determination that those funds were Wife's Marital Separate Property was not clearly erroneous. Wife was not entitled to a Category 3 credit for the value of Marital Separate Property. Id. at 201, 378 P.3d at 917.

**E.    The Family Court was not wrong to reduce Husband's equalization payment to Wife.**

Wife contends the Family Court abused its discretion by reducing her equalization payment by $135,602.50 "based on speculative future discretionary trust distributions to Wife" and

without finding "any other valid and relevant considerations to deviate from partnership [sic] model."

HRS § 580-47 gives the family court "wide discretion to divide Marital Partnership Property in a manner that is just and equitable under the facts and circumstances of each case." Hamilton, 138 Hawaiʻi at 206, 378 P.3d at 922 (quotation marks omitted). "The family court's determination of whether facts present valid and relevant considerations authorizing a deviation from the partnership model division is a question of law that this court reviews under the right/wrong standard of appellate review." Id.

As relevant here, HRS § 580-47 (2018) provided:

> (a) Upon granting a divorce . . . the court may make any further orders as shall appear just and equitable . . . (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate . . . . In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, . . . and all other circumstances of the case.

Here, the Family Court found: Wife self-reported monthly income of $13,028, which included regular and consistent monthly Craig Trust distribution of $12,500 and $528 from giving riding instructions; her monthly income "should have been $13,769.25, taking into account . . . an additional $741.25/month to reflect the annual Mellon Trust disbursement divided over the period of 12 months"; she consistently listed monthly expenses of "around $13,000.00"; she had no credible explanation for why her Craig Trust distributions stopped the month she filed for divorce; she claimed to have borrowed $75,000 from her father to meet expenses during the pendency of the divorce but "had not made any payments on the alleged 'loan' from her father, nor did she have any plans on how she was going to pay it back"; she never tried to increase her income to meet her expenses during the three year pendency of the divorce, nor did she "seek further employment opportunities to supplement her income, even though her expenses were much higher than her income"; the Craig Trust

17

reimbursed Wife for "large marital expenses" and "discretionary expenses," and distributed $100,000 for the down payment on the marital residence; Wife's "testimony that the [Craig Trust] trustees would not recommence her monthly trust distributions once the divorce was over [was] not credible."

Wife argues that "a court cannot divide property which the parties do not own at the time of its decree although they may acquire it later on," citing Schiller, 120 Hawaiʻi at 308, 205 P.3d at 573. There, we stated that "inheritances a spouse expects to acquire after divorce are speculative, because the testator is free to change his will at any point in the future. Like other speculative assets which do not constitute *property*, they are not part of the divisible estate." Id. (quotation marks omitted). We thus held "that the family court erred in considering any inheritance Martin may have been expecting from his mother, who was living at the time of trial, in dividing and distributing the property and debts of the parties." Id.

Here, the Family Court did not divide Wife's reasonably expected post-divorce trust distributions with Husband. The Family Court made these mixed findings and conclusions, which were not clearly erroneous:

> 26) Based on the evidence and testimony at trial and the record herein, it would not be unfair to estimate that the value of the Craig Trust was in excess of $36,000,000.00. Also, based on the testimony of the Parties and the evidence adduced, the Court believes that [Wife] will continue to have access to the Craig Trust, and that the trustees will continue to make disbursements to [Wife] for her continued care, maintenance and support.

> 27) The Court concludes that [Wife] has and will continue to have access to much greater financial resources than [Husband], and will be left in a much better financial situation after the divorce. It is also clear that any expenses for the children bourne by [Wife] for the children can and will be covered by the Craig Trust. It is also clear that [Husband] will not have the same access to financial resources for the support and maintenance of the children.

Thus did the Family Court find VARCs authorizing an equitable deviation from the marital Partnership Model Division, following the procedure explained in Jackson v. Jackson, 84

Hawaiʻi 319, 332–33, 933 P.2d 1353, 1366–67 (App. 1997). The Family Court was not wrong to reduce Husband's equalization payment to Wife.

## CONCLUSION

The October 5, 2023 *Amended Decree Granting Absolute Divorce and Awarding Child Custody* is affirmed.

DATED: Honolulu, Hawaiʻi, March 27, 2026.

On the briefs:

Mateo Caballero,
for Plaintiff-Appellant
A.P.

Sierra Hagg,
for Defendant-Appellee
S.B.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge